**UNITED STATES of America, ex rel. Fred W. PATOSKY, Petitioner,**

**v.**

**Charles J. KOZAKIEWICZ, Warden, Allegheny County Jail, Respondent, and Thomas W. Corbett, Jr., Attorney General of the Commonwealth of Pennsylvania, Additional Respondent.**

**Civil Action No. 96–451.**

United States District Court, W.D. Pennsylvania.

March 24, 1997.

H. David Rothman, Pittsburgh, PA, for petitioner.

Thomas N. Farrell, Office of the District Attorney Allegheny County, Pittsburgh, PA, for respondent.

## MEMORANDUM ORDER

BLOCH, District Judge.

Petitioner's petition for writ of habeas corpus was received by the Clerk of Court on March 13, 1996, and was referred to United States Magistrate Judge Ila Jeanne Sensenich for report and recommendation in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

The magistrate judge's report and recommendation, filed on March 3, 1997, recommended that the petition be denied and that a certificate of appealability be denied. The parties were allowed ten (10) days from the date of service to file objections. Service was made on Petitioner by delivery to counsel and on Respondents. Objections were filed by Petitioner on March 13, 1997. After *de novo* review of the pleadings and documents in the case, together with the report and recommendation and objections thereto, the following order is entered:

AND NOW, this 24th day of March, 1997;

IT IS HEREBY ORDERED that the petition is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

The report and recommendation of Magistrate Judge Sensenich, dated March 3, 1997, is adopted as the opinion of the court.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

SENSENICH, United States Magistrate Judge.

### I. RECOMMENDATION

It is recommended that the petition for writ of habeas corpus be denied and that a certificate of appealability be denied.

### II. REPORT

Petitioner Fred W. Patosky brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his conviction on charges

of indecent assault and harassment and his sentence of three to six months imprisonment and two years probation, imposed by the Court of Common Pleas of Allegheny County, Pennsylvania on August 5, 1993.

Petitioner was charged on January 17, 1991 with criminal counts of indecent assault and simple assault and the summary offense of harassment, with respect to an incident that occurred on November 19, 1990 involving Eleanor Paine, a co-worker at United Airlines. (Pet'r's Reprod. R. in Super. Ct. Appeal, Doc. # 3, at 2a–2aa.) Prior to trial, Petitioner's counsel, H. David Rothman, filed a Motion for Order Directing the Production of Hospital Records with respect to Ms. Paine. (Answer Ex. 1.) On July 27, 1992, Judge Raymond A. Novak issued an order directing the Beaver County Medical Center to produce psychiatric hospitalization records for Ms. Paine for the period beginning May 16, 1991 and continuing twenty days thereafter. (Answer Ex. 2.) On July 30, 1992, Judge Novak entered an order indicating that he had reviewed the medical records, and that the assistant district attorney would be given an opportunity to review the records and discuss them with Ms. Paine before defense counsel would be permitted to review the records on or after August 10, 1992. (Answer Ex. 4.)

However, after reviewing the records, the assistant district attorney informed the court that he had improvidently consented to the order for the production of records pursuant to the Pennsylvania Supreme Court's decision in *Commonwealth v. Lloyd*, 523 Pa. 427, 567 A.2d 1357 (1989). After that decision was issued, the Pennsylvania legislature amended a section of the Judicial Code to create an absolute privilege for confidential communications between a psychiatrist and his or her client. 42 Pa.C.S. § 5944 (amended Dec. 22, 1989, effective 60 days thereafter). Thereafter, Ms. Paine exercised her privilege to keep the records confidential. (Doc. # 3 at 41a.)[1] Petitioner conceded the existence of the statutory privilege but, in a

supplemental motion in limine filed November 18, 1992, challenged the constitutionality of the statute. (Doc. # 3 at 95a–99a.) In an order dated December 7, 1992, Judge Novak requested supplemental briefs on the issue and set oral argument for February 3, 1993. (Doc. # 3 at 39a–42a.)

At the hearing on February 3, 1993, Judge Novak recognized that, pursuant to § 5944, the records should not have been submitted to the court and should not have been reviewed by the assistant district attorney. However, he also found

> beyond a reasonable doubt that there is nothing in those records which puts the district attorney at an unfair advantage over the defense. Their content is not such that there is any advantage to the district attorney in having read the records, and, therefore, no unfairness to the defendant has resulted from the district attorney's review of the record.

(Hr'g Tr. Answer Ex. 5 at 4–5.) Although Judge Novak expressed concern over the holdings of the Pennsylvania appellate courts on this issue, particularly in a case in which a court has mistakenly reviewed the records, he followed these decisions and denied Petitioner's motion to have access to the records. (Answer Ex. 5 at 6.) Trial began on February 17, 1993, and on February 23, 1993, the jury found Petitioner guilty of indecent assault and not guilty of simple assault. Judge Novak found Petitioner guilty of the summary offense of harassment.

Petitioner filed post-trial motions on March 1, 1993 and on July 27, 1993. (Doc. # 3 at 13a–16a, 18a–21a.) On August 5, 1993, Judge Novak denied the post-trial motions and sentenced Petitioner to three to six months imprisonment on the indecent assault conviction; no further penalty was imposed on the harassment conviction. (Doc. # 3 at 157a–167a.) On August 24, 1993, Petitioner filed a notice of appeal in the Pennsylvania Superior Court (Doc. # 3 at 22a–23a), which was docketed at No. 1335 Pittsburgh 1993.

---

1. The parties have entered the following stipulation to correct the record:

   Mrs. Paine was informed by the assistant district attorney that the law required that the Court review her psychiatric records *in camera* prior to trial. The records were sent to the Court by Court Order. Mrs. Paine did not waive her privilege in this case.

   (Answer Ex. 3.)

On February 17, 1994, Judge Novak issued his opinion on the denial of Petitioner's post-trial motions. (Answer Ex. 6.)

In his appeal, Petitioner raised the following issues:

1. SHOULD THE DECISION OF THIS HONORABLE COURT IN *COMMONWEALTH VS. KYLE* BE REVERSED TO ALLOW AN *IN CAMERA* REVIEW OF THE ALLEGED VICTIM'S PSYCHIATRIC RECORDS?

   A. DOES THE ABSOLUTE PRIVILEGED COMMUNICATION BETWEEN PATIENT AND PSYCHIATRIST VIOLATE [PETITIONER'S] CONSTITUTIONAL RIGHTS TO EFFECTIVE CONFRONTATION, COMPULSORY PROCESS, DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL?

   B. DID THE COURT ERR IN DENYING AN EVIDENTIARY HEARING TO DETERMINE THE NECESSITY OF AN ABSOLUTE PRIVILEGE?

   C. DOES THE ABSOLUTE PRIVILEGE VIOLATE THE DOCTRINE OF THE SEPARATION OF POWERS?

   D. DOES THE ABSOLUTE PRIVILEGE CONSTITUTE AN ABUSE OF POLICE POWER?

2. DID THE COURT ERR AND DENY [PETITIONER] A FAIR TRIAL BY ALLOWING HIM TO BE IMPEACHED ON A COLLATERAL ISSUE?

3. DID THE COURT ERR AND DENY [PETITIONER] A FAIR TRIAL BECAUSE [PETITIONER] WAS ALLOWED TO BE IMPEACHED BY PROOF OF SPECIFIC CONDUCT TO REFUTE HIS EVIDENCE OF GOOD REPUTATION FOR PEACEFULNESS?

4. DID THE COURT ERR AND DEPRIVE [PETITIONER] A FAIR TRIAL BECAUSE EVIDENCE WAS ALLOWED RELATIVE TO THE ALLEGED VICTIM'S DEMEANOR AT THE TIME SHE REGISTERED HER COMPLAINT ALMOST TWO MONTHS AFTER THE ALLEGED OFFENSE AND BECAUSE THE COURT FAILED TO INSTRUCT ON THIS ISSUE AS REQUESTED?

5. DID THE COURT ERR IN FAILING TO INSTRUCT THE JURY, AS REQUESTED, TO VIEW THE TESTIMONY OF THE ALLEGED VICTIM WITH EXTREME CAUTION BECAUSE OF HER FAILURE TO MAKE A PROMPT COMPLAINT OF CHARGES OF INDECENT ASSAULT?

(Answer Ex. 7 at 3.) On March 16, 1995, the Superior Court affirmed Petitioner's sentence; Judge Cirillo dissented. (Answer Ex. 8.) This opinion was published as *Commonwealth v. Patosky*, 440 Pa.Super. 535, 656 A.2d 499 (1995).

On April 17, 1995, Petitioner filed a petition for allowance for appeal in the Pennsylvania Supreme Court, which was docketed at No. 210 W.D. Allocatur Docket 1995. He raised the following issues:

A. Was Petitioner denied effective confrontation, compulsory process and due process because he was denied access to an *in camera* view of the alleged victim's psychiatric records?

B. Was Petitioner entitled to an evidentiary hearing to determine the necessity of an absolute privilege?

C. Does the absolute privilege between psychiatrist and patient exceed a valid exercise of the police power?

D. Does the absolute privilege invade the function of the judiciary and constitute a violation of the Doctrine of Separation of Powers?

E. Did the courts below err in concluding that Petitioner was properly impeached on a collateral issue?

F. Even assuming the impeachment was not collateral to the offense of harassment, did the Superior Court err in affirming the admissibility of impeachment evidence where the summary offense of harassment was not being tried to the jury?

G. Did the Superior Court err in concluding that the trial court did not abuse his [sic] discretion by allowing Petitioner to be impeached as to his reputation by specific acts?

H. Was it error to admit evidence of the alleged victim's demeanor when she registered her late complaint and was it error to refuse Petitioner's requested instruction relative to this testimony?

I. Was Petitioner entitled to an instruction to the jury to consider the alleged victim's testimony with extreme caution in view of her late complaint?

(Answer Ex. 9 at 2–3.) On September 19, 1995, the Pennsylvania Supreme Court denied the petition for allowance of appeal by a *per curiam* order. (Answer Ex. 10.) *Commonwealth v. Patosky,* 542 Pa. 664, 668 A.2d 1128 (1995).

On March 13, 1996, Petitioner, still represented by Attorney Rothman, filed the instant petition.[2] He raises the following issues:

The primary issue presented by the instant Petition and in the state courts concerns the unconstitutionality of 42 Pa. C.S.A. Section 5944, wherein the legislature of Pennsylvania has enacted an absolute privilege on par with the lawyer-client privilege relative to communications between a psychiatrist and an alleged victim.

. . . .

Petitioner is in custody in violation of the Constitution of the United States. As succinctly put by Judge Cirillo, in his dissenting opinion, petitioner's "constitutional rights to effective confrontation, compulsory process and due process were violated when the trial court did not allow his attorney to conduct an *in camera* review of the alleged victim's psychiatric records."

The fact-finding procedure employed by the Commonwealth of Pennsylvania was inadequate to afford a full and fair hearing and the material facts were not adequately developed in the state court proceedings:

28 U.S.C. Section 2254(d)(2)(3) and (6). Petitioner was further denied due process in the state court proceedings because he was deprived of the effective assistance of counsel, who was unable to review and utilize the psychiatric records of the alleged victim, all in violation of the due process clause of the Fifth Amendment to the United States Constitution, the right to confrontation, in violation of the Sixth Amendment to the United States Constitution, and in violation of equal protection of the law, guaranteed by the Fourteenth Amendment to the United States Constitution. See petitioner's Supplemental Motion in Limine in the trial court (96a–99a). As a corollary to the violations of 28 U.S.C. Section 2254, urged a[b]ove, the absolute privilege violates the doctrine of separation of powers because it improperly impedes the judicial branch of government in performing its fact-finding function, an issue exhausted in the state courts.

The record in this case is not complete because the trial court and the appellate courts denied petitioner's request for an evidentiary hearing as to the *factual basis* for a need for an absolute privilege[,] an issue addressed throughout in the state courts. On slight evidence, at best, the legislature of Pennsylvania and the courts erroneously assumed the need for an absolute privilege to insure the integrity of the psychiatrist-patient relationship at the expense of the right of the accused to view the records of that relationship for the purpose, if possible, of impeaching the credibility of the alleged victim to prevent petitioner's loss of freedom. The need for such a hearing in this Honorable Court is necessary to complete the record.

(Pet. at 2, 8–10.) In a Memorandum in Support of Petition for Writ of Habeas Corpus, Petitioner describes his claims as follows:

I. PETITIONER'S CUSTODY IS UNLAWFUL IN VIOLATION OF THE UNITED STATES CONSTITUTION BECAUSE PENNSYLVANIA DE-

---

**2.** Both Petitioner and Respondents note that, as of January 3, 1996, he began serving the probation portion of his sentence. Therefore, he is "in custody" for purposes of this petition. *Barry v. Brower,* 864 F.2d 294, 296 (3d Cir.1988).

NIED PETITIONER HIS CONSTITUTIONAL RIGHT TO EFFECTIVE CONFRONTATION, COMPULSORY PROCESS AND DUE PROCESS, INCLUDING THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

. . . .

II. THE PENNSYLVANIA COURTS DEPRIVED PETITIONER OF SAID CONSTITUTIONAL RIGHTS BY DENYING AN EVIDENTIARY HEARING AND DISALLOWING PETITIONER AN OPPORTUNITY TO DISPROVE THE NECESSITY OF AN ABSOLUTE PRIVILEGE.

. . . .

III. PETITIONER'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL HAS BEEN VIOLATED BY PENNSYLVANIA'S FAILURE TO RECOGNIZE THAT THE ABSOLUTE PRIVILEGE HAS RESULTED IN A LEGISLATIVE ENCROACHMENT ON THE JUDICIAL BRANCH OF GOVERNMENT.

(Doc. # 2 at 1, 16, 23.)

*The Facts*

The trial court described the facts of the case as follows:

Eleanor Paine testified that during the early morning hours of November 19, 1990, she and [Petitioner], both of whom were employees of United Airlines, were in the break room area at the United Airlines air freight dock at Greater Pittsburgh International Airport. Ms. Paine commented that her fingers were stiff and [Petitioner] started to rub her hand. He then grabbed her hand with both of his hands and began to pull Ms. Paine toward a cot which was in the room. Ms. Paine told [Petitioner] to leave her alone. Instead, [Petitioner] put his arm around her and responded that he was "collecting the pay that she owed him."

He then pulled the victim down onto the cot and got on top of her. He put his hands under her knees, pulled her legs up, and pinned her to the cot. [Petitioner] then unbuckled her belt and unzipped her pants. Ms. Paine yelled "Stop it," several times but [Petitioner] continued and said repeatedly that he was just trying to make her feel good. When Ms. Paine began to complain that [Petitioner] was hurting her back, he got off of her and allowed her to stand up, but he then began to rub her breasts and he kissed the crotch area of her pants. Ms. Paine did not report the incident until almost two months later.

[Petitioner] testified that he never made any rude comments to Ms. Paine and the incident in question never occurred.

(Answer Ex. 6 at 3–4) (citations omitted).

*Exhaustion*

The first issue that must be addressed by a federal district court when considering a habeas corpus petition filed by a state prisoner is whether the prisoner has exhausted available state court remedies as required by 28 U.S.C. §§ 2254(b) and (c). Section 2254(b)(1) (as amended Apr. 24, 1996) provides:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(a) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

Furthermore, § 2254(c) provides:

An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the state to raise, by any available procedure, the question presented.

■ It is well settled that, as a matter of comity, the state should be provided with the first opportunity to consider the claims of constitutional violations and to correct any

errors committed in its courts. *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982); *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Accordingly, before a state prisoner's claims may be addressed by a federal habeas court, the constitutional issues must first have "been *fairly presented* to the state courts" for review. *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989) (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971)).

If petitioner has not exhausted his claims, he bears the burden of demonstrating that Pennsylvania courts will no longer entertain them. Petitioner has completed the process of direct appeal, in which he presented all but one of the issues presented in the instant petition: the claim of ineffectiveness of counsel was not presented to the Pennsylvania Supreme Court. His only possible remaining remedy would be to file a petition under the Pennsylvania Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–46 (1988, and as amended Nov. 17, 1995) (PCRA). The Court of Appeals has held that:

> if "a fair reading of the state post-conviction relief statute indicates that a state court might well entertain ... claims not raised in prior proceedings, and in the absence of a state court decision clearly foreclosing such a result," he has not exhausted his state remedies.

*Peoples v. Fulcomer,* 882 F.2d 828, 831 (3d Cir.1989) (quoting *Gibson v. Scheidemantel,* 805 F.2d 135, 139 (3d Cir.1986)). Under the amended PCRA, a petitioner must plead and prove by a preponderance of the evidence that he has been convicted of a crime under the laws of Pennsylvania and is serving a sentence of imprisonment, probation or parole;

> That the conviction or sentence resulted from one or more of the following:
>
> (i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

> (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>
> (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.
>
> (iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
>
> (vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.
>
> (vii) The imposition of a sentence greater than the lawful maximum.
>
> (viii) A proceeding in a tribunal without jurisdiction.
>
> (3) That the allegation of error has not been previously litigated or waived.
>
> (4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel.

§ 9543(b)(2–4) (as amended Nov. 17, 1995, effective Jan. 16, 1996).

The PCRA provides that an issue has been previously litigated if:

> (1) Deleted.
>
> (2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or
>
> (3) it has been raised and decided in a proceeding collaterally attacking the conviction or sentence.

42 Pa.C.S. § 9544(a) (as amended Nov. 17, 1995). An issue is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

Thus, this Court must examine each of petitioner's claims to see if it has been properly presented to the state courts and, if not, whether a state remedy remains available to him. As noted above, Petitioner presented all of the claims herein to the Pennsylvania courts with one exception: he did not present the ineffective assistance of counsel claim to the Pennsylvania Supreme Court. However, a PCRA petition raising that issue would be rejected as "previously litigated" because the claim was presented to the Pennsylvania Superior Court, the highest court to which Petitioner could have had review as a matter of right, and it was denied on the merits. 42 Pa.C.S. § 9544(a)(2). Although the issue is unexhausted and no state court remedy is available, the Court may not reach the merits of this issue because of petitioner's procedural default.

*Procedural Default*

Under the principle of procedural default, "if a state court has refused to consider a petitioner's claims because of a violation of state procedural rules, a federal habeas court is barred by his procedural default from considering the claims, unless the habeas petitioner can show 'cause' for the default and 'prejudice' attributable thereto." *Caswell v. Ryan*, 953 F.2d 853, 857 (3d Cir.) (citing *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977), and *Swanger v. Zimmerman*, 750 F.2d 291, 296 (3d Cir. 1984)), *cert. denied*, 504 U.S. 944, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992). Therefore, unless a petitioner can demonstrate cause for his default and prejudice suffered thereby, or that a fundamental miscarriage of justice will occur if the court does not excuse his default, the Court cannot review any procedurally barred claims presented in his habeas corpus petition. *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977); *Hull v. Freeman*, 991 F.2d 86, 88 (3d Cir.1993).

The issue of cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Prejudice means that the errors at trial "worked to [petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494, 106 S.Ct. at 2648 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1595–96, 71 L.Ed.2d 816 (1982)). Finally, the Supreme Court has held that a petitioner meets the fundamental miscarriage of justice exception if he "establish[es] that under the probative evidence he has a colorable claim of actual innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)) (as applied to procedurally defaulted claims in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). However, the Court of Appeals has held that, in order to meet this test, a petitioner must present new evidence of innocence and "persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Glass v. Vaughn*, 65 F.3d 13, 16 (3d Cir.1995) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995)), *cert. denied*, —— U.S. ——, 116 S.Ct. 1027, 134 L.Ed.2d 106 (1996). In *Glass*, the Court of Appeals assumed without deciding that the actual innocence test would apply in a noncapital case in which a petitioner argued that he committed the crime but was responsible for a lesser degree of guilt because he suffered from post-traumatic stress disorder. Nevertheless, given the evidence that Glass went to the murder scene armed and that he had earlier behaved violently toward the victim, the court could not "conclude that *no* rational juror would have voted to convict Glass of first-degree murder." *Id.* at 17.

Pennsylvania law unambiguously requires that "notice of appeal ... shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.App.P. 903(a). See also Pa.R.Crim.P. 1509 ("[a]n order granting, denying, dismissing or otherwise finally disposing of a motion for post-conviction collateral relief shall constitute a

final order for purposes of appeal"); Pa. R.App.P. 105(b) (an appellate court "may not enlarge the time for filing a notice of appeal, a petition for allowance of appeal, or a petition for review"); *Commonwealth v. Meehan,* 427 Pa.Super. 261, 628 A.2d 1151, 1155 (1993) (appeal periods cannot be enlarged except in the case of fraud or breakdown of the process of a court), *appeal denied,* 538 Pa. 667, 649 A.2d 670 (1994).

The Court of Appeals has held that a petitioner's failure to appeal the denial of a postconviction petition within thirty days constituted procedural default. In *Glass v. Vaughn,* 65 F.3d 13 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1027, 134 L.Ed.2d 106 (1996), the petitioner attempted to raise the issue of trial counsel's ineffectiveness for failing to investigate and pursue a defense as to the requisite intent for first degree murder based on his post-traumatic stress disorder (PTSD), a claim he raised for the first time in a second PCHA petition. Because the petitioner never appealed the denial of his PCHA petition to the Pennsylvania Superior or Supreme Courts, and because the time for such appeals had long since expired, the district court found that he had no more available state remedies and viewed his claim as exhausted.

However, "Glass' failure to appeal his claim of ineffective assistance of trial counsel deprived the state courts of an opportunity to consider his constitutional claim. The court views this failure to appeal as a procedural default." *Glass v. Vaughn,* Civ. A. No. 91–0963, 1992 WL 696986, at *5 (E.D.Pa. Nov.19, 1992). Subsequently, the court determined that although the petitioner failed to meet the "cause" standard, an evidentiary hearing was necessary to determine whether the petitioner would suffer a fundamental miscarriage of justice if his claim was not heard because there was "a fair probability that, in light of all the evidence, including that alleged to have been ... wrongly excluded or to have become available only after the trial, the trier of fact would have entertained a reasonable doubt of his guilt." *Glass v. Vaughn,* Civ. A. No. 91–0963, 1993 WL 76231, at *6 (E.D.Pa. Mar.16, 1993) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436,

454 n. 17, 106 S.Ct. 2616, 2627 n. 17, 91 L.Ed.2d 364 (1986)). The district court held a hearing, determined that trial counsel was constitutionally ineffective for failing to investigate the PTSD defense, held that this ineffectiveness demonstrated that the petitioner would suffer a fundamental miscarriage of justice if his claim was not considered, and granted the writ. *Glass v. Vaughn,* 860 F.Supp. 201 (E.D.Pa.1994).

The Court of Appeals reversed. *Glass v. Vaughn,* 65 F.3d 13 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1027, 134 L.Ed.2d 106 (1996). In reviewing the procedural history of the case, the Court of Appeals concluded as follows:

Glass filed various direct appeals and habeas proceedings, including this petition alleging that Attorney Denker was ineffective because he failed to investigate and pursue a diminished capacity defense. Glass presented and lost on this allegation of error before the state trial court in his second postconviction relief petition. *Unfortunately, he did not appeal. Thus, the district court held that petitioner's federal habeas claim was both exhausted and procedurally defaulted. Without the "actual innocence" exception, the court noted that his habeas claim would accordingly be barred.* 860 F.Supp. at 215. *We agree. Id.* at 15 (emphasis added) However, the Court of Appeals rejected the district court's use of the "fair probability" standard to determine whether the petitioner overcame the procedural default by meeting the "actual innocence" exception in light of the Supreme Court's intervening decision in *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Pursuant to *Schlup,* the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The petitioner thus is required to make a stronger showing than that needed to establish prejudice ... [This] standard thus ensures that petitioner's case is truly "extraordinary," while still providing petitioner a meaningful avenue by which to avoid a manifest injustice. *Id.* at 327, 115 S.Ct. at 867 (quoting *McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct.

1454, 1470, 113 L.Ed.2d 517 (1991)). The Court of Appeals held that "we cannot conclude under the *Schlup* test that petitioner has shown that it is more likely than not that *no* rational juror would have voted to convict Glass. Therefore, petitioner's actual innocence claim is doomed under the *Schlup* standard." 65 F.3d at 16–17.

Without the actual innocence exception, Glass' habeas claim was barred by his failure to appeal the denial of his PCHA petition within 30 days, a procedural default. Unless he can show cause for his failure to appeal or an exception to the bar of procedural default, Petitioner in this case is in the same position as Glass with respect to the ineffectiveness of counsel issue.

█ Petitioner has not met his burden of demonstrating the existence of "cause" to excuse his procedural default. Petitioner has been represented at all times in the state court proceedings, as well as herein, by Attorney Rothman, and he has offered no explanation for why he did not include the ineffectiveness of counsel claim to the Pennsylvania Supreme Court. The burden is on Petitioner to show cause for his procedural default, and he has not met that burden. As a result, "the court need not reach the question of prejudice." *Glass,* 1993 WL 76231, at *4.

Petitioner does not even address the fundamental miscarriage of justice exception. He has identified no evidence of his actual innocence, nor has he even claimed that it is more likely than not that no rational juror would have voted to convict him. Therefore, the Court will not address the merits of the ineffectiveness of counsel claim. The remaining claims are exhausted and will be addressed on the merits.

*Confrontation Clause Claim*

Petitioner argues that the application of § 5944 violated the confrontation clause of the Sixth Amendment to the Constitution, which guarantees an accused the right "to be confronted with the witness against him." U.S. Const. Amend. VI. The provision is made applicable to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 403–06, 85 S.Ct. 1065, 1067–69,

13 L.Ed.2d 923 (1965). The Pennsylvania privilege regarding communications with psychiatrists and psychologists provides that:

No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52) to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S. § 5944.

In *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), defendant Ritchie was charged with rape, involuntary deviate sexual intercourse, incest and corruption of a minor with respect to his thirteen-year-old daughter and he sought access to files collected and held by Children and Youth Services (CYS). CYS denied access pursuant to a statute, 11 Pa.C.S. § 2215(a), which provided for confidentiality of the CYS files except in eleven specific exceptions, including reporting to a court of competent jurisdiction, § 2215(a)(5). The trial court accepted CYS' assertion that the file contained no medical report and denied access, the trial proceeded with extensive cross-examination and Ritchie was convicted. On appeal, the Pennsylvania Superior Court found a confrontation clause violation and ordered the judge on remand to conduct an *in camera* review and allow Ritchie's lawyer to examine the entire file to argue relevance of statements (also the prosecutor could argue harmless error). *Commonwealth v. Ritchie,* 324 Pa.Super. 557, 472 A.2d 220 (1984). The Pennsylvania Supreme Court agreed that the case had to be remanded, but held that Ritchie's lawyer could search the entire file for any useful evidence, concluding that failure to permit this would violate both the confrontation and compulsory process clauses. *Commonwealth v. Ritchie,* 509 Pa. 357, 502 A.2d 148 (1985).

The Supreme Court of the United States affirmed in part and reversed in part, as

follows. A majority composed of Justices Powell, White, Blackmun, O'Connor and Chief Justice Rehnquist held that the case was final for purposes of review, that, rather than compulsory process, the due process clause was the more appropriate analysis for this kind of claim, and that remand was required for the state court to review the records *in camera* to determine whether the qualified privilege of § 2215(a) was outweighed by Ritchie's due process rights, as explained in detail below. A plurality of the Court (Justices Powell, White, O'Connor and Chief Justice Rehnquist) held that the Pennsylvania Supreme Court's analysis of the confrontation clause issue erroneously interpreted the Court's holding in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), to mean

> that a statutory privilege cannot be maintained when a defendant asserts a need, prior to trial, for the protected information that might be used at trial to impeach or otherwise undermine a witness' testimony.

> If we were to accept this broad interpretation of *Davis,* the effect would be to transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery. Nothing in the case law supports such a view. The opinions of this Court show that the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.... In short, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

480 U.S. at 52–53, 107 S.Ct. at 999 (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294–95, 88 L.Ed.2d 15 (1985)). The plurality concluded that:

> in this case the Confrontation Clause was not violated by the withholding of the CYS file; it only would have been impermissible for the judge to have prevented Ritchie's lawyer from cross-examining the daughter. Because defense counsel was able to cross-examine all of the trial witnesses fully, we find that the Pennsylvania Supreme Court

erred in holding that the failure to disclose the CYS file violated the Confrontation Clause.

*Id.* at 54, 107 S.Ct. at 1000.

Justice Blackmun wrote an opinion concurring in part and concurring in the judgment, in which he parted company with the plurality on the confrontation clause issue and indicated his agreement with a dissent written by Justice Brennan. He concluded that denial of access to information that would make effective cross-examination impossible *could* possibly state a confrontation clause violation, depending on the circumstances: in *Fensterer,* defense counsel's cross-examination served to undermine an expert's credibility and therefore the requirements of the confrontation clause were satisfied, but in *Davis,* a state law which prevented a witness from referring to a juvenile record which indicated that the witness was on probation for the same burglary for which Davis was charged made effective cross-examination impossible. Justice Blackmun considered *Ritchie* to present a situation more like Davis than *Fensterer,* and saw no reason to distinguish between pretrial and trial rules prohibiting access to certain materials. He concurred with the majority, however, because he believed that remand would be adequate for the trial court to address the confrontation clause issue and because the conviction might stand in any case if harmless error analysis applied. *Id.* at 61–66 & n. 3, 107 S.Ct. at 1003–06 & n. 3.

Justice Brennan (joined by Justice Marshall) dissented, concluding that this case presented a confrontation clause violation in that the prior statements to which counsel was denied access prevented Ritchie from effectively cross-examining the witness. *Id.* at 66–72, 107 S.Ct. at 1006–09. Justices Stevens, Brennan, Marshall and Scalia concluded that the case was not final for purposes of review, because CYS might refuse to produce the documents and appeal could be taken therefrom or the error might be harmless or the trial court might order a new trial. *Id.* at 72–78, 107 S.Ct. at 1009–12.

The Pennsylvania Supreme Court, in a case involving a similar statute providing an

absolute privilege,[3] followed the analysis of the *Ritchie* plurality and held that "the right to confront one's witnesses is satisfied if defense counsel receives wide latitude at trial to question witnesses." *Commonwealth v. Wilson*, 529 Pa. 268, 602 A.2d 1290, 1296, *cert. denied*, 504 U.S. 977, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992). When defense counsel had the opportunity to and in fact did cross-examine witnesses in a sexual assault case regarding their recollection of events and other relevant matters, "the defendant's right to confrontation was satisfied." *Id. See also Commonwealth v. Kyle*, 367 Pa.Super. 484, 533 A.2d 120, 124 (1987), *appeal denied*, 518 Pa. 617, 541 A.2d 744 (1988) (when defense counsel was permitted to cross-examine assault victim and call into question her memory and perception of the assault, there was no confrontation clause violation). Similarly, various federal courts have held that denial of access to records does not state a confrontation clause issue: *Tapia v. Tansy*, 926 F.2d 1554, 1557–59 (10th Cir.1991); *United States v. Tarantino*, 846 F.2d 1384, 1415 (D.C.Cir.1988); *United States v. Joseph*, 800 F.Supp. 1303, 1309–10 (D.VI.1992).

■ As the Court of Appeals for the Third Circuit has held, although of the views of "the Pennsylvania Supreme Court are entitled to respectful consideration, we cannot defer to [its] interpretation of federal law." *Gillespie v. Ryan*, 837 F.2d 628, 629 (3d Cir.) (citing *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983)), *cert. denied*, 488 U.S. 833, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). "On the other hand, this court is bound by the Pennsylvania Supreme Court's interpretation of Pennsylvania law." *Id.* (citing *Hunter*, 459 U.S. at 368, 103 S.Ct. at 679). Nevertheless, it is Petitioner's burden to demonstrate "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The only United States Supreme Court case to address this issue is *Ritchie*, in which a plurality of the Court concluded that the confrontation clause is not applicable to a claim involving the denial of access to pretrial materials. Although this Court is not bound by the analysis of the Pennsylvania cases following *Ritchie*, Petitioner has not pointed to other federal authority supporting his confrontation clause claim and therefore, in accordance with the *Ritchie* plurality opinion, he has not met his burden with respect to this claim.

Petitioner argues that *Commonwealth v. Lloyd*, 523 Pa. 427, 567 A.2d 1357 (1989), supports his confrontation clause claim. In that case, the defendant sought access to medical psychotherapeutic treatment records of a six-year-old rape victim, and access was denied following *in camera* review. The court held "under the confrontation clause of the Pennsylvania Constitution, that the appellant in the instant action was denied his right to confrontation when his attorney was denied access to the contents of the records. In addition we hold that the right to inspect those records is also mandated by the compulsory process clause of the Pennsylvania Constitution." *Id.* 567 A.2d at 1359.

Thus, the *Lloyd* case is a decision construing the Pennsylvania Constitution, and cannot be used to overrule an opinion of the United States Supreme Court concerning the federal Constitution. Moreover, *Lloyd* no longer appears to be binding precedent even with respect to the Pennsylvania Constitution. As the Pennsylvania Supreme Court has held:

> the Court in *Lloyd* was concerned with a common law privilege which could not defeat a defendant's constitutional rights. Implicit in the distinction drawn by the *Lloyd* court is the recognition that the existence of a statutory privilege is an indication that the legislature acknowledges the significance of a particular interest and has chosen to protect that interest.... As previously noted, the statutory privilege instantly at issue provides even greater protection than did the statute asserted in the *Ritchie* case. Therefore, an objection based on the protections afforded by the state constitution must also fail.

---

3. The court held that 42 Pa.C.S. § 5945.1, which protects communications made by victims to sexual assault counselors, was amended in 1990 in direct response to the court's decision in *In the Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 428 A.2d 126 (1981) (*"PAAR"*).

*Wilson,* 602 A.2d at 1297–98. The Superior Court has held that:

> It is undisputed that at the time of the *Lloyd* decision, the records of the psychotherapist and/or psychiatrist were not privileged. The import of the *Lloyd* holding is that under the constitution of this Commonwealth, an accused's rights of confrontation and compulsory process attach pre-trial and, therefore, the defendant Lloyd was entitled to subpoena the *non-privileged* therapeutic records of a child victim in the possession of a hospital in an effort to prepare for his defense. Because the records were not subject to any privilege, the court was not required to analyze whether the exercise of defendant's rights was subject to any limitation.

*Commonwealth v. Kennedy,* 413 Pa.Super. 95, 604 A.2d 1036, 1044 (*en banc*) (footnote omitted), *appeal denied,* 531 Pa. 638, 611 A.2d 711 (1992). *See also Commonwealth v. Smith,* 414 Pa.Super. 208, 606 A.2d 939, 941–42 (1992), *appeal denied,* 533 Pa. 624, 620 A.2d 490 (1993). Finally, it has been noted that § 5944 was amended in direct response to the Pennsylvania Supreme Court's decision in *Lloyd* to make the privilege absolute (see Trial Ct. Op. Answer Ex. 6 at 7; Legislative History, Doc. # 3 at 169a), and no case after *Lloyd* has followed its reasoning.

In conclusion, a plurality of the United States Supreme Court has concluded that denial of access to pre-trial records pursuant to a qualified privilege does not state a violation of the confrontation clause, an analysis that has been adopted by several federal courts following *Ritchie.* This conclusion has also been adopted by the appellate courts of Pennsylvania and applied to interpret both the federal and state constitutions when access to records is denied pursuant to an absolute statutory privilege in which the state's interest is even more compelling than the interest identified in *Ritchie. Lloyd,* the single case that held that this claim violated the *state* constitution, based its holding on a common law qualified privilege and every case that has followed *Lloyd,* interpreting the statute that was amended in response to *Lloyd* to create an absolute privilege, has held that it is inapplicable to claims involving

the statutory privilege. For all of these reasons, Petitioner has failed to demonstrate the existence of a confrontation clause violation based on the psychiatric records to which he was denied access and therefore with respect to this claim the petition should be denied.

*Compulsory Process Clause Claim*

▪ The compulsory process clause provides that the accused has the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI. The provision is made applicable to the states through the Fourteenth Amendment. *Washington v. Texas,* 388 U.S. 14, 17–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019 (1967). In *Ritchie,* the Supreme Court held that:

> This Court has never squarely held that the Compulsory Process Clause guarantees the right to discover the *identity* of witnesses, or to require the government to produce exculpatory evidence. Instead, the Court traditionally has evaluated claims such as those raised by Ritchie under the broader protections of the Due Process Clause of the Fourteenth Amendment. Because the applicability of the Sixth Amendment to this type of case is unsettled, and because our Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, we adopt a due process analysis for purposes of this case. Although we conclude that compulsory provides no *greater* protections in this area than those afforded by due process, we need not decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment. It is enough to conclude that on these facts, Ritchie's claims more properly are considered by reference to due process.

480 U.S. at 56, 107 S.Ct. at 1000–01 (citations omitted). *See also Wilson,* 602 A.2d at 1296–97 (applying due process rather than compulsory process analysis). Therefore, the Court should apply a due process clause analysis to Petitioner's claim.

*Due Process Clause Claim*

Pursuant to the Fourteenth Amendment to the Constitution, a state may not "deprive an

person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV. In *Ritchie*, the Supreme Court held that:

> At this stage, of course, it is impossible to say whether any information in the CYS records may be relevant to Ritchie's claim of innocence, because neither the prosecution nor defense counsel has seen the information, and the trial judge acknowledged that he had not reviewed the full file. The Commonwealth, however, argues that no materiality inquiry is required, because a statute renders the contents of the file privileged. Requiring disclosure here, it is argued, would override the Commonwealth's compelling interest in confidentiality on the mere speculation that the file "might" have been useful to the defense.
>
> Although we recognize that the public interest in protecting this type of sensitive information is strong, we do not agree that this interest necessarily prevents disclosure in all circumstances. *This is not a case where a state statute grants CYS the absolute authority to shield its files from all eyes. Cf. 42 Pa. Cons.Stat. § 5945.1(b) (1982) (unqualified statutory privilege for communications between sexual assault counselors and victims).* Rather, the Pennsylvania law provides that the information shall be disclosed in certain circumstances, including when CYS is directed to do so by court order. Pa. Stat. Ann., Title 11, § 2215(a)(5) (Purdon Supp.1986). Given that the Pennsylvania Legislature contemplated some use of CYS records in judicial proceedings, we cannot conclude that the statute prevents all disclosures in criminal prosecutions. In the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is "material" to the defense of the accused.

*Id.* at 57–58, 107 S.Ct. at 1001–02 (emphasis added). However, the Court rejected the Pennsylvania Supreme Court's conclusion that Ritchie should be permitted to search through the Commonwealth's files, holding instead that the CYS files be submitted to the trial court for *in camera* review. *Id.* at 59–60, 107 S.Ct. at 1002–03.

Because the statute cited by CYS in *Ritchie* provided only a qualified privilege, the Supreme Court could not determine whether Ritchie's due process rights were outweighed by the privilege. The Court specifically distinguished absolute privileges such as the rape counselor privilege enacted in § 5945.1. In *Wilson*, faced with a challenge to § 5945.1, the Pennsylvania Supreme Court noted this important distinction:

> The instant case is easily distinguishable from *Ritchie*. First, as discussed *supra*, we here are concerned with the absolute privilege which prohibits the disclosure of records under any circumstances absent the victim's consent. The enactment of an absolute privilege indicates the Commonwealth's compelling interest in protecting the confidentiality of the rape victim's records. The broadly drawn privilege is nevertheless narrowly tailored to achieve the compelling interest in protecting the victim's privacy so that her treatment and recovery process will be expedited. Therefore, defendant's federal constitutional rights have not been violated.

602 A.2d at 1297 (citations omitted). In passing, the court noted that "[t]he legislature has recognized that communications between a licensed psychologist and a patient are confidential. 42 Pa.C.S. § 5944. This statutory privilege has been interpreted as being absolute and has not been outweighed by a defendant's due process rights." *Id.* at 1295 (citing *Kyle* ).

In *Kyle*, the Superior Court held that:
> Unlike the statutory conditional privilege at issue in *Ritchie*, the Pennsylvania law in this case grants an absolute privilege for communications between a licensed psychologist and a client. We are, therefore, presented with a situation where the interests of the accused in learning of favorable witnesses as well as obtaining arguably useful information directly conflicts with society's interest in maintaining confidentiality between a psychologist and a client. Although we are without clear guidelines as to the means of accommodating these interests, the *Ritchie* decision teaches that

the rights of the accused are not without limitations. In *Ritchie*, the Court noted that the public interest in protecting the CYS file was "strong." Because the statutory conditional privilege did not preclude all use of such information, however, the Court concluded that any material information in the file could be disclosed. *Ritchie*, 480 U.S. at 58, 107 S.Ct. at 1002. Based upon this reasoning, we conclude that a compelling public interest would justify the total non-disclosure of information. We must, therefore, determine whether a compelling public interest supports the psychologist-patient privilege provided in Section 5944.

533 A.2d at 125 (footnote omitted). The court then reviewed the language of the statute, which clearly provides for an absolute privilege with no exceptions, and the public policies underlying the privilege, and concluded that:

> the interests protected by the privilege are substantial. We are, of course, cognizant of the heavy weight afforded to [the defendant's] interest in disclosure of the victim's file. Nonetheless, in weighing the public interests protected by shielding the file with those advanced by disclosure, we conclude that the balance tips in favor of non-disclosure. Nor do we believe that our decision today will unduly infringe on the rights of the accused. First, we note that as a matter of constitutional law, our courts have upheld testimonial privileges which bar a criminal defendant from obtaining or using confidential communications. *See Washington v. Texas*, 388 U.S. 14, 23 n. 21, 87 S.Ct. 1920, 1925 n. 21, 18 L.Ed.2d 1019 (1967); *Commonwealth v. Sims*, 513 Pa. 366, 521 A.2d 391, 395 (1987). Here, the privilege only limits access to statements made during the course of treatment by the psychologist. It does not foreclose all lines of defense questioning. Likewise, the privilege does not unfairly place the defense in a disadvantageous position; like the defense, the prosecution does not have access to the

confidential file and, thus, cannot use the information to make its case.

*Id.* at 129–30.

The court distinguished *PAAR* because it had been decided under a common law qualified privilege and because it was subsequently overruled by statute when the legislature amended § 5945.1. In addition, the court distinguished *Matter of Adoption of Embick*, 351 Pa.Super. 491, 506 A.2d 455 (1986), *appeal denied*, 513 Pa. 634, 520 A.2d 1385 (1987): it involved testimony by a psychologist of an examination of parents in a termination of parental rights proceeding taken at the request of the Children and Youth Agency and thus the parents were not "clients" within the scope of § 5944, they did not have any expectation of confidentiality when they knew that the psychologist would make a report to the agency or the court, the nature of the parental termination proceeding required a full and comprehensive hearing taking all evidentiary resources into consideration, and even if a confidential relationship applied, the public interest regarding termination of parental rights would outweigh the relationship. *Id.* at 130.[4] Finally, the court considered and rejected the argument that in camera inspection of the files was required:

> As we noted above, the purpose of the psychologist-client privilege is to aid in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure. We deem this purpose and the underlying considerations to be of paramount concern. Subjecting the confidential file to *in camera* review by the trial court (as well as the appellate courts and staff members) would jeopardize the treatment process and undermine the public interests supporting the privilege. Simply stated, an absolute privilege of this type and in these circumstances requires absolute confidentiality.

*Id.* at 131 (footnote omitted).

In *Kennedy*, the trial court held that *Kyle* prevented the defendant from gaining access

---

**4.** Petitioner refers to the quote in *Kyle* that in *Embick*, "the victim's mental condition was not at issue in the case and was therefore irrelevant to the determination." *Id.* However, that is only

one of many distinctions noted by the court for its decision, and it is a minor one in comparison to the litany of reasons given by the court in *Kyle* not to follow *Embick*.

to a victim's psychotherapeutic records, but nonetheless conducted an *in camera* review and determined that "nothing in them is material to the defense." 604 A.2d at 1038. The Superior Court, in an en banc decision, affirmed the trial court's ruling that the records were absolutely privileged, but held that "the trial court's *in camera* review of these records also constituted error." *Id.* at 1046. The case was remanded, however, because the trial court had improperly denied the accused access to records compiled pursuant to the Child Protective Services Law, 11 P.S. § 2215(b) (the court noted that this subsection provided even greater access than § 2215(a), the subsection at issue in *Ritchie* ).

In Petitioner's own case, the Superior Court held that:

> In *Commonwealth v. Smith,* 414 Pa.Super. 208, 213, 606 A.2d 939, 942 (1992), *appeal denied,* 533 Pa. 624, 620 A.2d 490 (1993), our Court held that the denial of access to statutorily protected psychiatric records under 42 Pa.C.S. § 5944 did not violate a defendant's right to confrontation and compulsory process. This case was just one of a long line of recent Pennsylvania decisions which have denied a defendant access to confidential therapeutic records. Therefore, in light of this precedential authority, [Petitioner's] constitutional rights have not been violated by this denial of access.

656 A.2d at 502 (footnote omitted) (citing *Wilson; Kennedy; Commonwealth v. Eck,* 413 Pa.Super. 538, 605 A.2d 1248, 1251–52 (1992) ("Information which is subject to an absolute privilege is not subject to disclosure and denial of access to a criminal defendant is required.")).

Petitioner argues that *Kyle* relies upon "an *unfounded concern* that victims of sexual assaults will forego needed treatment if they fear their most personal thoughts will be subjected to scrutiny on the witness stand." (Pet'r's Br. at 4–5, citing Daniel W. Shuman and Myron S. Weiner, *The Privilege Study: An Empirical Examination of the*

*Psychotherapist–Patient Privilege,* 60 N.C. L.Rev. 893–942 (1982)). However, the concerns underlying the psychotherapist-patient privilege have been identified and upheld by numerous state and federal courts [5] and Petitioner's citation to a law review article does not demonstrate "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Petitioner also argues that *Commonwealth v. Spiewak,* 533 Pa. 1, 617 A.2d 696 (1992), a case concerning the Pennsylvania rape shield law, supports his claim. In that case, the Commonwealth argued that the Rape Shield Law, 18 Pa.C.S. § 3104(a), barred evidence of the victim's prior sexual conduct, but the Pennsylvania Supreme Court held that the issue in the case was whether the sexual contact occurred before the victim's sixteenth birthday and Spiewak sought to introduce the testimony she had made at a custody hearing that the older man who had relations with her before her sixteenth birthday was not Spiewak (her stepfather) but another man. Thus, the exclusion of this testimony, offered not to impugn her character but to impeach the story she told, violated the confrontation clauses of the federal and state constitutions. However, that case concerned the introduction of *testimony* the victim had made at a prior proceeding, not privileged communications made to a psychotherapist with the expectation of absolute confidentiality. It presents a situation similar to that in *Embick,* which was distinguished in *Kyle.* Moreover, the *Spiewak* court's only citation to Supreme Court precedent is *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974), a case which the plurality in *Ritchie* found distinguishable from the situation in which a defendant attempts to use the confrontation clause to engage in pre-trial discovery. Finally, the court emphasized that "the excluded evidence gained enhanced relevance and probative value in light of three developments at

---

5. As noted in the Commonwealth's Answer, the United States Supreme Court recently recognized a psychotherapist-patient privilege under the Federal Rules of Evidence, the appropriateness of which was "confirmed by the fact that all 50 States and the District of Columbia have enacted into law some form of psychotherapist privilege." *Jaffee v. Redmond,* —— U.S. ——, —— & n. 11, 116 S.Ct. 1923, 1929 & n. 11, 135 L.Ed.2d 337 (1996).

trial, each of which the Commonwealth exploited in its closing argument." 617 A.2d at 701. Petitioner does not argue that the Commonwealth exploited evidence from the excluded psychotherapist files and the trial court specifically held "beyond a reasonable doubt that there is nothing in those records which puts the district attorney at an unfair advantage over the defense." (Answer Ex. 5 at 4–5.) Therefore, *Spiewak* is inapplicable to this case.

Petitioner also cites the dissents by Justice Zappala in *Wilson* and Judge Cirillo in *Kennedy* and in this case itself, in support of his position. Of course, these dissents do not represent the current status of the law, nor does Petitioner explain how they will achieve majority status in the future. In addition, Petitioner cites decisions from other states, cited and rejected by the Superior Court in *Kyle*, that held that a statutory privilege must yield to a defendant's confrontation clause rights: *State v. Whitaker*, 202 Conn. 259, 520 A.2d 1018, 1025 (1987); *Bobo v. State*, 256 Ga. 357, 349 S.E.2d 690 (1986); *State v. McBride*, 213 N.J.Super. 255, 517 A.2d 152, 159 (1986); *State v. Farrow*, 116 N.H. 731, 366 A.2d 1177 (1976). The Commonwealth cites other cases finding that defendants' rights had to yield to certain privileges: *People v. District Court of Denver*, 719 P.2d 722, 727 (Colo.1986) (access to psychotherapy records denied when victim did not waive privilege); *People v. Foggy*, 149 Ill.App.3d 599, 102 Ill.Dec. 925, 500 N.E.2d 1026 (1986) (right to confrontation must yield to rape counselor-victim privilege); *Diggs v. Owens*, 833 F.2d 439, 444 (3d Cir.1987) (compulsory process right yields to witness' Fifth Amendment privilege against self-incrimination) Irrespective of the conclusions reached by some state courts, however, the issue in this case is whether Petitioner's federal constitutional rights were violated by the application of a Pennsylvania statute. Although Pennsylvania cases on this issue are not binding on this Court, they are certainly more relevant to the issue than the decisions of other state courts concerning different statutory privileges in other states, particularly when there is no uniformity among these decisions.

Finally, Petitioner cites *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), a case in which the Supreme Court rejected former President Nixon's refusal to submit tapes, memoranda, papers, transcripts and other materials relating to certain precisely identified meetings between the President and others who were subjects of the Watergate prosecutions in response to a subpoena based on his general executive privilege. In response to the President's two asserted grounds to support an absolute executive privilege, the Supreme Court held that:

> neither the doctrine of separation of powers, nor the need for confidentiality of high-level communications, without more, can sustain an absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances. The President's need for complete candor and objectivity from advisors calls for great deference from the courts. However, when the privilege depends solely on the broad, undifferentiated claim of public interest in the confidentiality of such conversations, a confrontation with other values arises. Absent a claim of need to protect military, diplomatic, or sensitive national security secrets, we find it difficult to accept the argument that even the very important interest in confidentiality of Presidential communications is significantly diminished by production of such material for *in camera* inspection with all the protection that a district court will be obliged to provide.

*Id.* at 706, 94 S.Ct. at 3106–07. However, the Court noted that its reasoning was based upon the proposition that "'the public ... has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege." *Id.* at 709, 94 S.Ct. at 3108 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 668, 92 S.Ct. 2646, 2650, 33 L.Ed.2d 626 (1972)).

> The privileges referred to by the Court are designed to protect weighty and legitimate competing interests. Thus, the Fifth Amendment to the Constitution provides that no man "shall be compelled in any criminal proceeding to be a witness against himself." And, generally, an attorney or a

priest may not be required to disclose what has been revealed in professional confidence. These and other interests are recognized in law by privileges against forced disclosure, established in the Constitution, by statute, or at common law. Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.

*Id.* at 709–10, 94 S.Ct. at 3108 (footnote omitted). Therefore, the Court was unwilling to create a new absolute privilege for presidential communications absent any language establishing such a privilege in the Constitution or in the case law (with the exception of communications concerning military and diplomatic secrets).

Thus, the Court in *Nixon* did not hold that states may not enact absolute privileges. Rather, the Court refused to recognize a generalized absolute presidential privilege in the absence of an "interest recognized by law." By contrast, the Pennsylvania statute specifically states the legislature's intention was to create an absolute privilege and even equates the psychotherapist-patient privilege established in § 5944 with the absolute attorney-client privilege recognized by the Court in Nixon. *See also United States v. Trevino,* 89 F.3d 187, 192 (4th Cir.1996) (distinguishing *Ritchie* and denying *in camera* review of presentence investigation reports because their confidentiality "has always been jealously guarded by the drafters of the federal rules, and by the federal courts.") Therefore, the *Nixon* case is not dispositive on the issue presented herein: whether a statute enacted by the state legislature for the express purpose of protecting communications made between psychotherapist and client by granting them an absolute privilege from disclosure without the client's consent violates the due process clause of the Constitution.

■ In conclusion, Petitioner has failed to demonstrate that the denial of access to the psychiatric records pursuant to § 5944 violated his right to due process when the state expressly determined that the policies supporting the creation of the statute necessitated the enactment of an absolute privilege akin to the attorney-client privilege long recognized by law. The appellate courts of Pennsylvania, guided by the Supreme Court's decision in *Ritchie,* have held that the interests protected by this statute are weighty, that they outweigh the interests of the accused in searching through a victim's psychotherapeutic records hoping to find helpful evidence, and that subjecting the records to *in camera* review would "jeopardize the treatment process and undermine the public interests supporting the privilege." *Kyle,* 533 A.2d at 131. Although these decisions are not binding on this Court, they are "well reasoned" and in keeping with the Supreme Court's concerns in *Ritchie, Nixon,* and other cases. For all of these reasons, Petitioner has failed to demonstrate that this claim entitles him to relief, and therefore, as to this claim, the petition should be denied.

### Denial of Evidentiary Hearing

After denying Petitioner's confrontation, compulsory process and due process claims on the merits, the Superior Court noted that "we need not address [Petitioner's] second argument, that the trial court erred in denying an evidentiary hearing to determine the necessity of an absolute privilege." *Patosky,* 656 A.2d at 503 n. 6. Petitioner argues that the denial of an evidentiary hearing by the state courts deprived him "of an opportunity to disprove the necessity of an absolute privilege." (Doc. # 2 at 16.) He refers to a study challenging the assumption that an absolute privilege is necessary to protect psychotherapist-patient communications: Daniel W. Shuman and Myron S. Weiner, *The Privilege Study: An Empirical Examination of the Psychotherapist–Patient Privilege,* 60 N.C. L.Rev. 893–942 (1982). He requests this Court to hold an evidentiary hearing to "complete the record."

The Commonwealth cites materials that indicate that allowing access to psychotherapists' records would not only "chill the victim from reporting sexual assault crimes, it also has a chilling effect on a victim from seeking proper mental health treatment after a traumatic criminal episode." (Answer at 24, citing R. Sherman, *Rape Victim's Records Vul-*

*nerable*, 15 Nat'l L.J. 17 & 18, Dec. 28, 1992—Jan. 4, 1993; Knapp, Vande Creek and Zirkel, *Privileged Communications for Psychotherapist in Pennsylvania: A Time for Statutory Reform*, 60 Temp. L.Q. 267 (1987)). The Commonwealth also argues that:

> Patosky's request for an evidentiary hearing must be denied based upon the ruling by the Supreme Court in *Jaffee v. Redmond*. Indeed, Patosky asks that this Court review privileged information of the victim in the present case. The victim has invoked the privilege, and under federal law the privilege is absolute in this civil case. *Id*.

(Answer at 21 n. 6.) By referring to *Jaffee v. Redmond*, —— U.S. ——, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the recent Supreme Court case recognizing an absolute psychotherapist-patient privilege under the Federal Rules of Civil Procedure, the Commonwealth appears to be arguing that Petitioner could not gain access to Ms. Paine's records in this Court because of that case. However, neither Petitioner nor the Commonwealth have addressed the appropriate issue.

*Standards for Holding Evidentiary Hearings*

■ To determine whether a habeas hearing is required, the court "must first determine whether [petitioner] has alleged facts that, if proved, would entitle him to relief." *Smith v. Freeman*, 892 F.2d 331, 338 (3d Cir.1989) (citing *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963), *Toomey v. Clark*, 876 F.2d 1433, 1435 (9th Cir.1989)).[6] If so, the court "must then decide whether an evidentiary hearing is necessary to establish the truth of those allegations." *Id*. In the Smith case, Smith's factual allegations, taken in the light most favorable to him, if proved, would have established a violation of his constitutional rights in that his guilty plea was not knowing and voluntary because he was mentally incompetent at the time he entered it. Because the state factfinding procedure was not adequate to afford a full and fair hearing (*Townsend* factor 3) when trial counsel misrepresented the conclusions of a psychiatrist who had found Smith incompetent to stand trial, the district court was required to hold an evidentiary hearing on the issue. *Id*. at 339–40.

■ The purpose of an evidentiary hearing is not, as Petitioner argues, for this Court to delve into the societal interests supporting the enactment of § 5944 and reweigh decisions made by the Pennsylvania legislature. Nor is the issue whether this Court, if presented with the request to gain access to the records as an initial matter, would apply § 5944 or conclude that Petitioner's right to the psychotherapeutic records outweighed the statutory privilege. In this case, Petitioner's claim is that § 5944 deprived him of certain constitutional rights. For the reasons discussed above, Petitioner has failed to establish this claim and the petition should be denied. But this claim raises only a legal argument, there are no facts to be developed, and therefore no evidentiary hearing is necessary. No hearing was required in the state courts once they determined that the denial of access to psychotherapeutic records did not violate Petitioner's constitutional rights, and no evidentiary hearing is required in this Court for the same reason. Therefore, Petitioner's claim that the denial of an evidentiary hearing in the state courts deprived him of a constitutional right should be denied, and his request for an evidentiary hearing in this Court should be denied.

*Separation of Powers*

Petitioner argues that the enactment of § 5944 violated the doctrine of separation of powers. He contends that § 5944 "impairs the ascertainment of truth and Petitioner's right to a fair trial, matters which are peculiarly within the province of the Judicial branch of government, under Article V of the

---

6. On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (the AEDPA), which revises many of the procedures for habeas corpus proceedings. Although the amendments provide standards to be applied to findings made in state court proceedings and the procedure to be followed when a petitioner has failed to develop the factual basis for his claims in a state court proceeding, 28 U.S.C. § 2254(e), they do not alter the standard for determining whether a hearing is necessary in federal court, namely whether a petitioner requires an opportunity to develop facts in support of his claim.

Pennsylvania Constitution: *Commonwealth v. Sutley*, 474 Pa. 256, 278–79, 378 A.2d 780, 791–92 (1977)." (Doc. # 2 at 25.) The Superior Court reviewed this claim and held that:

The doctrine of separation of powers was not intended to absolutely seal off the three branches of government from one another, as it obviously intended that there would be a degree of interdependence and reciprocity between the various branches. *Commonwealth v. Sutley*, 474 Pa. 256, 262, 378 A.2d 780, 783 (1977). Moreover, one of the most distinguished jurists, Justice Samuel Roberts, explained the interdependence and independence between the judicial and legislative branches as follows:

Legislative infringement on the province of the judiciary, and the concomitant threat to individual liberties, may take one of two forms. First, the Legislature may take action which impairs the judiciary, either by requiring the performance of non-judicial functions, or by interfering with the power of the judiciary to perform its essential functions.... Second, the Legislature may usurp the power of the judiciary by taking it upon itself to judge individual cases.... Enactment of ... a rule of general application [which does not take on one of these two forms] is a proper legislative function.

*Sutley*, 474 Pa. at 278–79, 378 A.2d at 791–92 (ROBERTS, J., dissenting) (citations omitted).

As the enactment of 42 Pa.C.S. § 5944 does not impair the independence of the judiciary or usurp the power of the judiciary by taking over individual cases, this statute is constitutionally valid. Consequently, this argument is without merit.

*Patosky*, 656 A.2d at 503.

■ A habeas petitioner's claim may be dismissed because it fails to present a federal constitutional issue, which places it outside the scope of habeas review, because "it is not the province of a federal habeas court to reexamine state questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–

68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975)). *See also Donnelly v. DeChristoforo*, 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871–72, 40 L.Ed.2d 431 (1974); *Geschwendt v. Ryan*, 967 F.2d 877, 889 (3d Cir.) (*en banc*), *cert. denied*, 506 U.S. 977, 113 S.Ct. 472, 121 L.Ed.2d 379 (1992).

■ Petitioner's last claim arises under Pennsylvania law. The Pennsylvania courts have determined that § 5944 does not violate the state's doctrine of separation of powers, and this Court is bound by the Pennsylvania courts' interpretation of Pennsylvania law. *Gillespie v. Ryan*, 837 F.2d 628, 629 (3d Cir.) (citing *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983)), *cert. denied*, 488 U.S. 833, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988).

For all of the reasons identified above, Petitioner has failed to demonstrate that his claims entitle him to relief, and therefore the petition for writ of habeas corpus should be denied.

Additionally, a certificate of appealability should be denied. The decision whether to grant or deny a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). If a certificate of appealability is granted, the Court of Appeals must consider the merits of the appeal. However, when the district court denies a certificate of appealability, the Court of Appeals can still grant one if it deems it appropriate. 28 U.S.C. § 2253.

"A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (amended Apr. 24, 1996). This petition does not present a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability should be denied.

Therefore, it is recommended that the petition for writ of habeas corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.