

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-7-1995

# Glass v Vaughn

Precedential or Non-Precedential:

Docket 94-1811

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Glass v Vaughn" (1995). *1995 Decisions*. Paper 247.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/247

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94–1811


COMMER GLASS

V.

DONALD T. VAUGHN; THE ATTORNEY GENERAL OF
THE STATE OF PENNSYLVANIA;
THE DISTRICT ATTORNEY FOR PHILADELPHIA COUNTY


Donald T. Vaughn, Superintendent, State Correctional
Institution at Graterford; Ernest D. Preate, Jr.,
Attorney General of Pennsylvania and Lynne Abraham,
District Attorney of Philadelphia County,

Appellants


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil Action No. 91–00963)


Argued February 28, 1995

Before:  SLOVITER, Chief Judge,
NYGAARD and McKEE, Circuit Judges

(Opinion Filed September 7, 1995)

DONNA G. ZUCKER, ESQUIRE (Argued)
Office of the District Attorney
1421 Arch Street, 5th Floor
Philadelphia, PA 19102
Attorney for Appellants

STEPHEN A. WHINSTON, ESQUIRE (Argued)
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103
Attorney for Appellee

NYGAARD, Circuit Judge.

Respondents appeal from the order of the district court granting a writ of habeas corpus to the petitioner, Commer Glass, who is currently serving a life sentence for first-degree murder. The district court held that Glass' trial counsel was ineffective because he failed to investigate petitioner's military experiences and subsequent history of bizarre behavior, which the court concluded would have led counsel to put on a diminished capacity defense. We do not reach that issue. Instead, because petitioner's current habeas claim was procedurally defaulted in state court and he does not fall within the "actual innocence" exception recently set forth in Schlup v. Delo, ___ U.S. ____, 115 S. Ct. 851 (1995), we will reverse.

I.

The facts of this case can be found in the published opinion of the district court, Glass v. Vaughn, 860 F. Supp. 201 (E.D. Pa. 1994), and need only be summarized. Petitioner Glass was arrested for the murder of Billie Ann Morris, bound over for trial, and retained Attorney Barry Denker to defend him. Glass told both the police and his attorney that he was elsewhere when the crime was committed. Attorney Denker's investigation was therefore limited to interviewing petitioner and driving him along the route he claimed to have taken on the night of the murder. As we shall see, however, there was much more to the story.

Petitioner served in the Armed Forces in Vietnam, experiencing heavy combat. He saw many people get killed,

3

including his friends. On at least two occasions, petitioner killed Vietnamese civilians, including a Vietnamese woman who allegedly made a threatening gesture to a fellow soldier after a sexual encounter. Petitioner, like many other Vietnam veterans, exhibited a variety of behaviors consistent with post-traumatic stress disorder ("PTSD"). He had acted violently towards Morris even before the murder, and remarked the day before the killing that "women do what I say do, if not I kill them."

Nonetheless, he never told his attorney about his military combat experiences nor about the psychological problems that followed. Indeed, as the district court recognized, "no person volunteered any information to Denker and Denker never sought any information that would have alerted him to the possibility of a psychiatric defense." Glass, 860 F. Supp. at 204. Glass did suggest that Attorney Denker interview Phyllis Brown, whom Glass later married, to find out what type of person he was, but Denker never interviewed her. The district court found that Mrs. Glass was aware of petitioner's psychological problems and would have told Denker about them had she been asked.

Attorney Denker offered no witnesses at trial and did not argue that Glass' diminished capacity from PTSD negated the mens rea element of the crime. Denker instead argued, consistent with Glass' statement to the police, that he had an alibi. The jury found Glass guilty of first-degree murder and the court sentenced him to life imprisonment. While in prison, he was formally diagnosed as suffering from PTSD.

4

Glass filed various direct appeals and habeas proceedings, including this petition alleging that Attorney Denker was ineffective because he failed to investigate and pursue a diminished capacity defense. Glass presented and lost on this allegation of error before the state trial court in his second postconviction relief petition. Unfortunately, he did not appeal. Thus, the district court held that petitioner's federal habeas claim was both exhausted and procedurally defaulted. Without the "actual innocence" exception, the court noted that his habeas claim would accordingly be barred. 860 F. Supp. at 215. We agree.

Glass argues on appeal that, because he raised the issue of attorney effectiveness in his first postconviction relief petition to the state court (which he did appeal), he has properly exhausted the claim currently before this court. We disagree. In his earlier Post Conviction Hearing Act proceeding, Glass argued that his <u>postconviction</u> counsel was ineffective for not amending the petition to include the after-discovered evidence of PTSD and diminished capacity, even though he had made counsel aware of the prison psychologist's diagnosis. Here, Glass asserts that his <u>trial</u> counsel was ineffective because he failed to investigate a defense based on an undisclosed and undiagnosed psychiatric condition. We cannot say that Glass' earlier petition fairly presented this issue to the state appellate courts.

The district court, however, held that Glass made out a claim of "actual innocence" sufficient to overcome petitioner's procedural default. It opined:

> If the evidence [of PTSD] had been presented at trial, there is certainly a fair probability that a trier of fact would have entertained a reasonable doubt as to his guilt of murder in the first degree. Thus, the court concludes that petitioner has suffered a fundamental miscarriage of justice in that a constitutional violation, ineffective assistance of counsel, has probably resulted in the conviction of petitioner of murder in the first degree when he is actually innocent of that crime and guilty of murder in the third degree.

Id. at 216.

The court ordered an evidentiary hearing to decide Glass' habeas petition on its merits. Petitioner called three expert witnesses, two of whom would have been available to testify in 1976. Respondents called one. All of the witnesses testified that there was sufficient information in the mental health literature about PTSD that the condition could have been diagnosed and presented at Glass' trial. Moreover, all testified that Glass indeed suffered from PTSD at the time of the murder. They differed, however, in their opinions whether Glass was in a dissociative state that impaired his ability to deliberate or premeditate, making him innocent of first-degree murder. Petitioner's experts testified that Glass was in such a state; respondents' expert was unable to reach a conclusion without further testing.

6

The district court found that petitioner was prejudiced at trial because counsel failed to pursue a diminished capacity defense, and that Attorney Denker unreasonably failed to investigate facts indicating the possibility of such a defense. It accordingly concluded that trial counsel was ineffective and granted the writ.

## II.

After the initial briefing in this appeal, the Supreme Court handed down its decision in Schlup, which concerned the standard for actual innocence claims. We requested that the parties submit supplemental briefs on the question of whether a diminished capacity defense--which goes to the degree of guilt rather than factual guilt--can state an actual innocence claim in light of Schlup. Schlup itself does not determine that issue.

In Schlup, a prison inmate was charged with murdering a fellow inmate. He was convicted of first-degree murder and sentenced to death. Schlup's habeas petition alleged that his counsel was ineffective and that the prosecution had improperly withheld evidence from him. He argued that he was factually innocent, but nonetheless was found guilty as a result of these constitutional errors. The Supreme Court established a strict test for claims of actual innocence.

> The . . . habeas petitioner [must] show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The petitioner thus is required to make a

7

stronger showing than that needed to establish prejudice. . . .

Id. at 867 (emphasis added, citations and internal quotation marks omitted). The Court continued:

The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

Id. at 868.

The district court, without the benefit of the Supreme Court's opinion in Schlup, and relying on the earlier actual innocence cases of Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639 (1986), and Kuhlmann v. Wilson, 477 U.S. 436, 106 S. Ct. 2616 (1986), held that petitioner need only show "a fair probability that a trier of fact would have entertained a reasonable doubt as to his guilt of murder in the first degree." 860 F. Supp. at 216. It additionally found that Glass "would have chosen a diminished capacity defense based on his PTSD if he had been fully informed." Id. at 215. Because it found a fair probability that a trier of fact would have entertained a reasonable doubt as to his guilt, the court concluded that Glass had satisfied the requirements for an actual innocence claim.

8

The Supreme Court has not decided whether the actual innocence test is applicable in a noncapital case when there is evidence that defendant committed the crime but argues that he or she was responsible for a lesser degree of guilt. For purposes of this opinion, we will assume arguendo that the actual innocence test applies. Nonetheless, we cannot conclude under the Schlup test that petitioner has shown that it is more likely than not that no rational juror would have voted to convict Glass. Therefore, petitioner's actual innocence claim is doomed under the Schlup standard.

The gravamen of Glass' psychiatric evidence was that he was suffering from PTSD and was in a dissociative state at the time of the murder, having no intent to kill and no recollection of the murder after it happened. These psychiatric opinions, however, were based entirely on Glass' subjective reporting and were arrived at years after the crime. On the other hand, there was evidence that Glass went to the murder scene armed and that he had earlier behaved violently towards the victim. Moreover, when arrested, Glass did not give the police the explanation he now proffers--that he had no memory of what happened--but relied instead on an alibi that he was not even at the scene when the killing occurred. Based on this record we cannot conclude that no rational juror would have voted to convict Glass of first-degree murder.

Accordingly, petitioner has not made out a claim of actual innocence. His habeas petition is therefore barred, and we will reverse the judgment of the district court.