### Richard C. McNAUGHTON

v.

### UNITED STATES of America.

No. Civ.A. 97–2797.

No. 93–CR–147–10.

United States District Court,
E.D. Pennsylvania.

April 6, 1998.

Opinion Denying Reconsideration
May 11, 1998.

---

Richard McNaughton, pro se, for plaintiff.

Mary E. Crawley, Asst. U.S. Atty., Peter Goldberger, for defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Richard McNaughton ("McNaughton") was indicted on March 26, 1993 as part of a seventeen-defendant, eighty-nine count indictment charging evasion of excise taxes on fuel oil, and related offenses. In a superseding indictment filed on September 19, 1993, McNaughton was charged with 24 counts of conspiracy, wire fraud, tax evasion, and RICO forfeiture. On May 23, 1994, after a 20–day trial, McNaughton was convicted on all counts. On October 25, 1994 he was sentenced to a term of 40 months imprisonment, five years of supervised release and a $1400 fine.

McNaughton appealed his conviction and sentence to the Third Circuit, raising, *inter alia,* the issue of whether the sentencing court erred "in determining that it did not have the authority to depart on the grounds of the defendant's medical condition." The Court of Appeals affirmed McNaughton's sentence and ruled that the sentencing court's "refusal to depart was based not on a belief regarding its authority to depart, . . . but on McNaughton's failure to present evidence sufficient to warrant an exercise of the court's discretion under section 5H1.4." *U.S. v. Veksler,* 62 F.3d 544, 551 (3d Cir.1995). McNaughton's petition for writ of certiorari to the U.S. Supreme Court was denied on January 16, 1996, McNaughton v. U.S., 51 U.S. 1075, 116 S.Ct. 780, 133 L.Ed.2d 731 (1996). McNaughton surrendered to begin serving his sentence on December 5, 1995.

On April 18, 1997, McNaughton filed a motion to vacate, set aside or correct his sentence, under 28 U.S.C. § 2255. His motion asserted two grounds for relief: 1) that his trial counsel's failure to adequately support his motion for a downward departure under U.S.S.G. § 5H1.4 denied McNaughton of his Sixth Amendment right to the effective assistance of counsel, and 2) that the court imposed sentence based on a misapprehension either of relevant facts or of the extent of its discretion to grant a downward departure, in violation of the Due Process Clause. After directing the government to file a response, I acceded to several requests from McNaughton that the government's time to

respond be extended so that medical records could be obtained and shared with the government, with the prospect of reaching some accommodation of McNaughton's concerns. No settlement was reached, and the government filed its response on September 11, 1997. McNaughton then requested and received permission to file a reply brief, which he filed on November 20, 1997.[1] The reply brief included as exhibits two medical reports, one from a pulmonologist who reviewed McNaughton's treatment records, and one from a psychiatrist who evaluated McNaughton in the fall of 1995. An evidentiary hearing was held on April 1, 1998, at which time McNaughton offered the testimony of John Rogers Carroll, who testified as an expert on the prevailing standards of skill and care in the Philadelphia area criminal defense bar in 1994 and currently. McNaughton also offered into evidence Mr. Carroll's affidavit and the affidavit of McNaughton's trial counsel, Robert Welsh. The following constitute my findings of fact and conclusions of law with regard to McNaughton's 2255 motion.

## A. Findings of Fact

At the time of sentencing, McNaughton was represented by Robert Welsh, who had represented McNaughton at trial. Prior to sentencing on October 25, 1994, Welsh was aware that McNaughton, who was 62 at the time of sentencing, had pulmonary problems; he had observed McNaughton using a bronchodilator inhaler once or twice. Welsh was aware that McNaughton smoked cigarettes. Welsh was also aware, at the time of preparation for sentencing, that McNaughton's wife had great concerns regarding her husband's health, specifically that she thought he was drinking too much and that he had serious pulmonary problems.

Welsh undertook to gather evidence to present to the sentencing court in support of a downward departure from the applicable guideline range on the basis of McNaughton's health. Welsh determined that McNaughton's alcohol use would not be a possible ground for departure, but that his pulmonary problems would be.[2] Welsh asked McNaughton and his wife on several occasions who he should contact concerning the extent and seriousness of McNaughton's health problems. On each occasion, McNaughton and/or his wife directed Welsh to consult McNaughton's treating physician, Dr. Winslow Murdoch. Dr. Murdoch is not a pulmonologist. Welsh contacted Dr. Murdoch, and after several requests,[3] obtained the following report:

> Mr. McNaughton has advanced, chronic, obstructive pulmonary disease. His lung function tests show that he has little reserve to tolerate any significant pneumonia or severe bronchitis. These would be life-threatening. His lung volume indicates that his disease is severe and that he may soon need to be on oxygen therapy for life-support/prolongation at home.

In his affidavit, Welsh described his response to Murdoch's report:

> 12. I did not ask Dr. Murdoch for any further elaboration upon the report and I did not seek an examination by any other physician. My reason for not seeking such additional information was that I spoke with Dr. Murdoch on the telephone in advance of the sentencing and, to the best of my recollection, after I received his faxed note. I asked Dr. Murdoch specifically about the implication of his diagnosis for Mr. McNaughton's life span. I also told him that it was important because it could influence the length of time he would be sentenced to jail.
>
> 13. Dr. Murdoch told me during the telephone conversation that Mr. McNaughton would "be fine if he would just stop smok-

---

1. At the time that McNaughton filed his reply brief on November 20, 1997, McNaughton had served just over 23 months of his 40 month term. He is scheduled to be released to a halfway house on July 2, 1998.

2. McNaughton does not assert that Welsh's determination, that a motion for downward depar-

ture based on alcohol dependency would be unavailing, was deficient.

3. Welsh made at least two requests to me to continue the sentencing date, stating that he was in the process of obtaining medical reports to submit at the time of sentencing. Both requests were granted.

ing." I recall this not only because it was an important issue, but also because, at sentencing, government counsel made an observation to the same effect about Mr. McNaughton's health problem.

14. My decision then to go no further was based upon the fact that Dr. Murdoch plainly had a basis for an evaluation of Mr. McNaughton, Dr. Murdoch knew the importance of the issue, and yet would not give me any basis upon which to argue that Mr. McNaughton faced a likelihood of a shortened life span.

Welsh Affidavit, at ¶¶ 12–14.

At sentencing, Welsh submitted Dr. Murdoch's faxed report and argued that "this material should inform the Court's exercise in sentencing discretion and that it should be the basis for a departure. I cannot tell the Court that this man is [sic] time bomb, but I do believe that he is in a substantially different position healthwise than many, many other people. And finally, I do ask that it be part of the record for the Bureau of Prisons." (Transcript of Sentencing Hearing, 10/25/94, pp. 32–3).

After hearing argument from the government on this issue, I denied Welsh's motion for a downward departure, stating that " . . . the Defendant has not met . . . his burden in showing—the Court his right to depart and—for that reason, I'm not going to consider a departure." (Transcript of Sentencing Hearing, 10.25,94, p. 33) I then sentenced McNaughton to a term of 40 months imprisonment, based on a guideline range of 37 to 46 months.

In the fall of 1995, when McNaughton was still free on bail pending his appeal, Welsh arranged to have McNaughton evaluated by Dr. Richard F. Limoges, a psychiatrist with experience with addictions. Dr. Limoges' report, submitted to the court in 1995 as part of a request that McNaughton be permitted to remain free on bail pending determination of his petition for writ of certiorari to the Supreme Court, and also submitted as part of the current § 2255 motion, included the opinion that McNaughton

suffers from two very serious progressive addictions, namely that of alcoholism and that of addiction to nicotine. They are both of sufficient severity to compromise his health and both are progressive and fatal. If Mr. McNaughton does not receive treatment for these addictions, he will die before his time in a ghastly manner.

(Limoges report, Exhibit C to defendant's reply memorandum).

A 10/26/95 letter from Dr. Murdoch, also prepared at Welsh's request for submission as part of a bail request, contained the opinion that Mr. McNaughton had an "estimated mortality in less than five years, based on his lung function." As part of McNaughton's § 2255 motion, McNaughton's current counsel requested that Dr. Scott Manaker, a pulmonologist, review McNaughton's medical records from Dr. Murdoch and the Bureau of Prisons. In a report prepared August 1, 1997, Dr. Manaker offered the opinion that "Mr. McNaughton has severe chronic obstructive pulmonary disease, with elements of both emphysema and asthma. His life expectancy is less than five years." Dr. Manaker's report noted that Dr. Murdoch had reached the same conclusion in October 1995, and concurred in that prognosis. (Manaker report, Exhibit B to defendant's reply memorandum).

At the evidentiary hearing held on April 1, 1998, John Rogers Carroll, an experienced and respected member of the local criminal defense bar, testified and adopted his affidavit, in which he stated that McNaughton

faced a level 21 sentence of up to 47 months. He had no other chance for downward departure apart from the health issue. While Dr. Murdoch's testing and observations gave good grounds to seek evidence of "extraordinary infirmity", his letter could not possibly carry the defense burden of proof on the requested departure. Counsel was therefore obliged, in my opinion, to seek the medical evidence needed from a pulmonologist (not a family practitioner) once he was on notice of this medical condition.

(Carroll Affidavit at ¶ 13).

Carroll went on to opine that "[f]ailure to pursue this evidence is not consistent with the standards of skill and care expected in

the Philadelphia federal Criminal Defense bar in 1994 or today." *Id.* at ¶ 14.

## B. Conclusions of Law

### 1. Ineffective Assistance of Counsel

█ A Sixth Amendment claim alleging ineffective assistance of counsel requires a showing that counsel's performance was deficient, i.e., that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment", and that "counsel's er-, rors were so serious as to deprive the defendant of a fair trial, a trial whose result is reasonable." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In evaluating the first part of the test, I am mindful that "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 688–9, 104 S.Ct. 2052. I am therefore bound to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. 2052 (citation omitted).

The essence of McNaughton's ineffective assistance of counsel claim is that a reasonably competent attorney, when faced with the inconclusive report offered by Dr. Murdoch on October 13, 1994, would have persevered, either to obtain more persuasive language from Dr. Murdoch, or to obtain an evaluation and report from a pulmonary specialist such as Dr. Manaker. McNaughton argues that his trial counsel's conduct, in failing to pursue either course, fell below an objective standard of reasonable representation, and that he was prejudiced as a result.

As noted in *Strickland,* there is no mechanical rule I can employ to determine whether counsel's conduct falls short of the Sixth Amendment's strictures. The American Bar Association guidelines are informative, as is the testimony of an experienced criminal defense attorney like Mr. Carroll. Ultimately, however, this is a legal determination informed by experience and judgment. Mr. Carroll's opinion notwithstanding, I find no basis in the record before me to conclude that Mr. Welsh's investigation with regard to McNaughton's health status at the time of sentencing constituted "error so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* ·

My reasons for this conclusion are several. McNaughton does not, and cannot argue that Welsh failed to investigate the possibility of moving for downward departure based on McNaughton's poor health, or that he didn't understand his burden with regard to this sentencing issue. *Cf., U.S. v. Day,* 969 F.2d 39, 43 (3d Cir.1992) (counsel ineffective for failing to research and understand guideline issue). Welsh knew that his client ·was ill, and that it was possible to move for downward departure based on an extraordinary physical impairment. Welsh asked his client and his client's wife who could best evaluate McNaughton's health status; he then obtained a report from McNaughton's treating physician, found it unsatisfactory on an issue likely to persuade a judge to grant a downward departure, i.e., life expectancy, and went back to the doctor, at least once, in an attempt to obtain a more strongly worded report. This conduct clearly meets the "investigation" requirement of effective representation. *Cf., United States v. Kauffman,* 109 F.3d 186, 190 (3d Cir.1997) (counsel ineffective for rejecting insanity defense without conducting any investigation into its strengths or weaknesses); *Glass v. Vaughn,* 860 F.Supp. 201 (E.D.Pa.1994) (Yohn, J.), *rev'd on other grounds,* 65 F.3d 13 (3d Cir. 1995) (counsel failed to conduct proper interview of defendant, thereby failing to discover possible posttraumatic stress defense).

Nor can McNaughton argue that Dr. Murdoch was not qualified to offer an expert opinion regarding McNaughton's lung disease, or that his opinion would carry less weight than that of a pulmonologist. *Cf., Rogers v. Israel,* 746 F.2d 1288 (7th Cir.1984) (habeas petitioner entitled to remand on ineffective assistance of counsel claim for, *inter*

*alia*, evidentiary hearing on issue of whether physicians consulted by defense counsel could have been qualified as an expert). As recognized by Welsh, Dr. Murdoch "plainly had a basis for an evaluation of Mr. McNaughton, Dr. Murdoch knew the importance of the issue, and yet would not give . . . any basis upon which to argue that Mr. McNaughton faced a likelihood of a shortened life span." (Welsh Affidavit at ¶ 14). McNaughton did not seek to test or impeach the credibility of either Welsh or Dr. Murdoch by having them appear at the hearing.

Unlike ineffectiveness cases where counsel's conduct is challenged as not being the "result of sound trial strategy", *Strickland*, this case presents the question of how far counsel need go in pursuit of that strategy. Faced with this less-than satisfactory report from his client's treating physician, as to an issue which may have persuaded a sentencing court that a sentence below the guideline range was warranted, what should competent trial counsel have done? Mr. Carroll testified that

> [t]here is just no doubt that he was obliged, keep in mind that this was his client's only chance for a downward departure, and there is no doubt in my mind that he had to do whatever he could to support that claim. And it clearly means that when he got that unsatisfactory fax from Dr. Murdock [sic] that he should have gone to somebody knowledgeable in the field such as a pulmonologist.

(Transcript of evidentiary hearing, 4/1/98, at p. 12).

Mr. Carroll's opinion would be more persuasive if Dr. Murdoch were not himself knowledgeable in the field, but that is not the case. No one disputes that Dr. Murdoch was qualified to offer an expert opinion regarding McNaughton's health and life expectancy. Mr. Carroll testified that McNaughton is not required to show that Welsh would have "struck gold", only that Welsh did not even look. The record makes plain, however, that Welsh *did* look, to an eminently reasonable and credible source—the treating physician, and looked again, and came up short. In essence, Carroll would have me read into the Sixth Amendment guarantee of effective assistance of counsel a requirement that an attorney, when trying to support his or her case, is obliged to continue to consult with more and more experts (as Dr. Murdoch undeniably was) until he or she gets the answer which is likely to carry the day. That may be the standard of practice for personal injury attorneys, and it may even be, as Mr. Carroll opines, the standard of practice in the Philadelphia criminal defense bar, but it is not what the Sixth Amendment requires of criminal defense attorneys. The purpose of the Sixth Amendment effectiveness guarantee "is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

An even more troubling aspect of this case is the question of what it was that, but for trial counsel's failure to further pursue expert opinion, could or should have been discovered and placed before me at the time of sentencing. McNaughton's current counsel argued, in his brief and at the hearing, that he did not believe that I intended to impose what would effectively be close to a life sentence on Mr. McNaughton, and that Welsh could have put the evidence of McNaughton's diminished life expectancy in evidence at the time of sentencing in 1994. No evidence, however, has been presented to indicate that a five-year, or indeed any-year, prognosis for McNaughton existed as of October 1994. Dr. Manaker's report reviews Dr. Murdoch's records, and concurs in Dr. Murdoch's *August 1995* diagnosis that McNaughton has advanced emphysema, with a five-year life expectancy. Dr. Manaker's report refers generally to poor lung function test results in 1994 and "similar" ones in 1995, but he nowhere offers the opinion that those tests would support a five-year prognosis as of October 1994. Assuming that Dr. Manaker, like Dr. Murdoch, was asked the necessary questions by the attorney requesting the report, it is not at all clear that trial counsel could have obtained a more favorable report in 1994.

Conceding that Welsh was on notice that his client was or may have been seriously ill,

and even conceding that a departure under 5H1.4 based on an extraordinary physical impairment was his client's best hope,[4] I cannot conclude that Welsh's ultimately unsuccessful efforts to meet his evidentiary burden in this regard fell below an objective standard of reasonableness. As a result, McNaughton's Sixth Amendment claim fails.[5]

### 2. Due Process Claims

■ McNaughton makes two due process claims—that he was sentenced under a misapprehension of fact and/or that he was sentenced under a misapprehension of law. As to the first, McNaughton asserts that if at the time of sentencing, I based my decision regarding McNaughton's eligibility for a downward departure on a fact (that McNaughton did not have a significantly decreased life expectancy relative to other people his age) which was not true, then his sentence is constitutionally infirm. McNaughton relies on *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) and *U.S. v. Tabares,* 86 F.3d 326 (3d Cir.1996) in support of this argument. As to the second, McNaughton relies on *Koon v. U.S.,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) to argue that McNaughton was sentenced based on an interpretation of my discretion to depart from guideline ranges which has since been determined by the Supreme Court to be unnecessarily narrow.

McNaughton's misapprehension of fact argument fails because, as noted in my findings regarding his Sixth Amendment claim, McNaughton has not demonstrated that the fact of his diminished life expectancy existed at the time of sentencing. Moreover, it seems highly problematic to couch a claim regarding after-discovered evidence of ill health in due process terms, as it may often be the case that a terminal illness or serious disability will not be discovered until after sentencing. Unlike *Townsend* and *Tabares,* upon which McNaughton relies, and which both involved sentences imposed based on inaccurate information regarding the defendant's prior record, McNaughton was sentenced based on contemporaneously accurate information regarding his health.[6]

■ To comport with the Due Process clause, sentences must be based on facts having "some minimal indicium of reliability beyond mere allegation". *Tabares,* 86 F.3d at 328, citing *U.S. v. Baylin,* 696 F.2d 1030, 1040 (3d Cir.1982). McNaughton is not arguing that he was sentenced based on false or unreliable information, but rather on an arguably incomplete analysis of that information. I am not aware of any case which casts such an argument in due process terms; such a formulation would open up for due process challenge every sentence imposed without benefit of every possibly relevant bit of information and expert opinion about the defendant. This, it seems, is just a recasting of the Sixth Amendment argument; for the same reason that it is not ineffective representation to fail to put every possibly relevant piece of information before the court at sentencing, it does not violate due process to sentence a defendant based on accurate and relevant information which, theoretically, might have been more persuasively presented.

---

4. McNaughton's trial counsel in fact made three efforts, none of which could be characterized as frivolous, to reduce the range within which his client would be sentenced—he challenged the "sophisticated means" enhancement, he argued for a downward departure for acceptance of responsibility, and he argued for a downward departure based on his client's poor health.

5. Because I conclude that Welsh's representation did not fall below an objective standard of reasonableness, I need not consider whether McNaughton was prejudiced as a result, in other words, whether the error was so serious as to undermine confidence in the result, or whether there is a reasonable probability that the outcome might have been different. With reference

to the issue of granting a downward departure based on McNaughton's reduced life expectancy, I acknowledged at the evidentiary hearing that "I would have thought about it if I had that information." (Tr. 4/1/98 at p. 40) I am also aware, however, that physical condition remains, after the Supreme Court decision in *Koon v. U.S.,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), a discouraged factor under the Sentencing Guidelines, and that several factors, in addition to life expectancy, inform the exercise of discretion in considering a departure under 5H1.4.

6. I had before me, at the time of sentencing, the medical reports prepared by Dr. Murdoch, as well as the letter from Mrs. McNaughton regarding her husband's poor health.

■ McNaughton's misapprehension of law argument requires little discussion, as this precise issue was argued to and decided by the Court of Appeals. The Court of Appeals affirmed McNaughton's sentence and ruled that the sentencing court's "refusal to depart was based not on a belief regarding its authority to depart, ... but on McNaughton's failure to present evidence sufficient to warrant an exercise of the court's discretion under section 5H1.4." *U.S. v. Veksler*, 62 F.3d at 551. McNaughton argues that since he was sentenced, and his sentence affirmed, before the Supreme Court decided *Koon v. U.S.*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), he is entitled to resentencing under the standard of greater judicial discretion in applying and departing from the guidelines announced in that case. I understand this argument to say that if McNaughton had been sentenced with the benefit of the *Koon* decision, a sentencing court would have had greater latitude in accepting the evidence that was presented as sufficient to support a downward departure.

This argument fails because physical condition was a discouraged factor under the sentencing guidelines pre-*Koon*, and it remains so post-*Koon*. As such, *Koon* instructs that "[i]f the special factor is a discouraged factor ... the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.* at 96, 116 S.Ct. at 2045; see also *U.S. v. McQuilkin*, 97 F.3d 723 (3d Cir.1996) (discussing standard for departure based on physical impairment). Although some pre-*Koon* sentencing deci-

sions may indeed have been made based on a misapprehension of the proper breadth of sentencing discretion, McNaughton has pointed to nothing either in the record or in the post-*Koon* case law to indicate that his motion for a downward departure was considered under a narrower reading of the guidelines than that authorized by the Supreme Court in *Koon*.[7] I therefore conclude that he was not sentenced based on a misapprehension of law in violation of the Due Process clause.

### C.   Order

**AND NOW,** this 6th day of April, 1998, upon consideration of defendant/petitioner's motion to set aside, vacate or correct sentence under 28 U.S.C. § 2255, the government's response, defendant/petitioner's reply brief and attached exhibits, and after an evidentiary hearing, **IT IS ORDERED THAT** defendant/petitioner's motion is **DENIED** for the reasons stated in the accompanying memorandum.   There is no basis for issuance of a certificate of appealability.

### *MEMORANDUM AND ORDER ON RECONSIDERATION*

On April 18, 1997, Richard McNaughton filed a motion to vacate, set aside or modify his sentence under 28 U.S.C. § 2255[1]. McNaughton's motion alleged three constitutional errors reconsideration with respect to my ruling on his misapprehension of fact argument, and appended a revised medical report from Scott Manaker, M.D. McNaughton asserts his motion under either Fed.R.Civ.P. 59(e)(motion to amend or alter

7. Even if McNaughton had demonstrated that he was sentenced under a misapprehension of my authority to depart from the guidelines, such a misapprehension would not necessarily require re-sentencing.  Both *Koon* and *U.S. v. Brock*, 108 F.3d 31 (4th Cir.1997), cited by McNaughton for the proposition that some precedent has been effectively overruled by *Koon*, were direct appeals.  McNaughton has pointed me to no cases, and I have discovered none, where a *pre-Koon* sentence was collaterally attacked as based on a misapprehension, later clarified in *Koon*, of the extent of the court's authority to depart.

1. On October 25, 1994, McNaughton was sentenced to a term of 40 months imprisonment after being convicted of multiple counts of con-

spiracy, wire fraud, tax evasion and RICO forfeiture.  McNaughton remained free on bail pending appeals, and began serving his sentence on December 5, 1995.  The § 2255 motion was filed approximately sixteen months later, and was the subject of several requests, by McNaughton, for continuances so that more evidence could be gathered and shared with the government. McNaughton has now served approximately 29 months of his 40–month sentence and is scheduled to be transferred to a half-way house in July. I note that, three and a half years after the sentencing date, McNaughton is in the general prison population and has not needed to be placed on oxygen.

judgment) or Local Rule 7.1(g) (motion for reconsideration or reargument).

The government responded to McNaughton's argument on May 4, 1998. The government argues that McNaughton's motion for reconsideration should be denied because amendment or alteration of a judgment under Rule 59(e) is only appropriate in the case of after-discovered evidence, and the evidence now offered by McNaughton in support of his § 2255 motion is not after-discovered. The government further argues that even if I were to consider the newly offered evidence, the evidence on which McNaughton was originally sentenced remains accurate. For the following reasons, I will deny the motion for reconsideration.

The basis of McNaughton's misapprehension of fact argument—and indeed, of all three alleged errors raised in his § 2255 motion—is that at the time of sentencing, I was unaware of the severity of McNaughton's medical condition, specifically that he had a five-year life expectancy resulting from advanced chronic obstructive pulmonary disease. McNaughton argued in his § 2255 motion, and argues now, that the incomplete picture I had of McNaughton's health before me at the time of sentencing was prejudicial and affected the outcome. At the hearing on McNaughton's motion, his counsel acknowledged that the medical evidence he was offering did not indicate that a prognosis of a five-year life expectancy had been made as of the time of sentencing in October 1994, but rather in 1995, a year later. In my April 6, 1998 memorandum and order, I stated, as one of the reasons for rejecting his due process argument, that "McNaughton's misapprehension of fact argument fails because, as noted in my findings regarding his Sixth Amendment claim, McNaughton has not demonstrated that the fact of his diminished life expectancy existed at the time of sentencing." McNaughton has now moved for

reconsideration, and has appended to his motion a medical report containing the opinion that the fact *did* exist at the time of sentencing.

The government is correct that under either Rule 59(e) or Local Rule 7.1(g), McNaughton is not entitled to a reconsideration of the April 6, 1998 order. His newly-offered medical evidence is not after-discovered; there was no impediment to it being provided to the court before the April 1, 1998 hearing. A motion for reconsideration is also appropriate to correct manifest errors of law or fact. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). McNaughton's characterization of the evidence notwithstanding, there has been no manifest error of law or fact in this case, since McNaughton was sentenced based on accurate, even if, as McNaughton contends, incomplete, information. Moreover, the April 6, 1998 order denying § 2255 relief did not turn on the existence or non-existence of this newly-offered evidence. I will therefore deny the motion for reconsideration. Even assuming, *arguendo,* that I were to reach the merits of McNaughton's motion and consider the newly-offered medical evidence, which contains the opinion that McNaughton had a five-year life expectancy at the time of sentencing, I would still conclude that McNaughton was not denied due process when he was sentenced without benefit of this information.

As I went on to say in the April 6th memorandum and order, due process requires that a defendant be sentenced based on truthful and reliable information. *U.S. v. Tabares,* 86 F.3d 326 (3d Cir.1996). The *Tabares* court noted that "a defendant should not be sentenced on the basis of information about him that is materially incorrect." *Id.* at 329, quoting *Moore v. U.S.,* 571 F.2d 179, 183 (3d Cir.1978).[2]

In this case, McNaughton was not sentenced based on false, unreliable or material-

---

**2.** *Moore* involved information contained in the pre-sentence investigation report, that the defendant had beaten and shot several people, killed one person, and that he was a member of the "Black Mafia", which the defendant alleged was false. The defendant did not see the pre-sentence report until six years after he had been convicted, at which point he filed a habeas corpus petition. The district court denied the petition without a hearing. The Third Circuit ruled that the defendant was entitled to a hearing on his habeas petition to determine whether the information was false or unreliable, and whether the trial court had relied on the information in imposing sentence.

ly incorrect information. McNaughton does not and cannot argue that he was sentenced based on false or unreliable information regarding, for example, the information required to be included in a presentence investigation report under Fed.R.Crim.P. 32(b)(4)—criminal history, role in the offense, other relevant conduct, nature of the offense, acceptance of responsibility, victim impact, etc. Instead he argues that, as to his medical condition, a discouraged factor for consideration under the Sentencing Guidelines, he was sentenced based on truthful information which was nonetheless a less than complete picture of his poor health.[3]

■ As I stated in my April 6th memorandum and order, McNaughton was sentenced, not based on incorrect information, but on an arguably incomplete analysis of that information. Even conceding, which I do not, that the medical evidence at sentencing was incorrect (for failing to include the five-year life expectancy conclusion), it was not *materially* incorrect, i.e., it did not go to an issue necessary to the correct determination of McNaughton's sentence under the Guidelines.[4] As I stated in the April 6th memorandum and order, "for the same reason that it is not ineffective representation to fail to put every possibly relevant piece of information before the court at sentencing, it does not violate due process to sentence a defendant based on accurate and relevant information which, theoretically, might have been more persuasively presented." McNaughton's introduction of medical evidence showing that he had a five-year life expectancy at the time of sentencing requires me to remove the word "theoretically" from that statement; it does not, however, compel or even suggest the result that his sentence, imposed with knowledge of his poor health but without the "fact" of his five-year life expectancy, implicates the Due Process Clause.

**THEREFORE,** this 11th day of May, 1998, upon consideration of McNaughton's motion for reconsideration (docket # 859), and the government's response, **IT IS ORDERED THAT** the motion for reconsideration is **DENIED.**

---

3. McNaughton argues in his motion for reconsideration that Dr. Manaker's supplemental report, in addition to providing the five-year prognosis, also contradicts the opinion of McNaughton's treating physician, Dr. Murdoch, that McNaughton would be "fine if he would quit smoking." Dr. Murdoch's statement was not before me at sentencing, but was instead referred to in Mr. Welsh's affidavit submitted as part of the § 2255 motion; therefore, it could not have formed any part of the basis for imposing sentence. Moreover, a conflict of opinion between two experts would not, of necessity, render one of the opinions false or unreliable.

4. In *Tabares,* in which the Third Circuit remanded the case for resentencing because the defendant was sentenced based on inaccurate information regarding prior convictions, the court noted that it "need not decide today whether every situation in which a district court relies on a mistaken belief about a prior conviction would require resentencing." *Id.* at 329. *Tabares, Moore,* and *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (U.S.1948), all involved false information regarding the defendant's prior criminal conduct.

If every sentence based on inaccurate information regarding prior convictions is not constitutionally infirm, then *a fortiori,* a sentence based on inaccurate information regarding a defendant's medical condition, a discouraged factor for consideration, would not implicate the Due Process Clause. A defendant might be sentenced based on inaccurate information regarding any number of things—how many children they had, how long they had worked at their job—which, while relevant to the exercise of the court's discretion within the guideline range, would not be material to a constitutionally valid sentence.

I also note that the *Tabares* court ordered that the defendant be resentenced but expressed no opinion as to what the new sentence should be.