**Thomas W. JONES**

v.

**Frederick FRANK, et al.**

**Civil Action No. 97–2792.**

United States District Court,
E.D. Pennsylvania.

Nov. 24, 1998.

James A. Backstrom, Philadelphia, PA, for Petitioner.

Marilyn F. Murray, Asst. U.S. Atty., Civil Litigation Unit, Philadelphia, PA, Donna G. Zucker, Philadelphia, PA, for Respondent.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Petitioner seeks habeas corpus relief from his state court conviction pursuant to 28 U.S.C. § 2254. He asserts that trial counsel had a conflict of interest that violated his Sixth Amendment right to effective assistance of counsel. The petition will be denied.[1]

---

**1.** On June 5, 1997, this petition was referred to a United States Magistrate Judge. The magistrate did not issue a Report and Recommendation. Therefore, I have completed a de novo review of the entire petition.

## I. Facts and Procedural History

In August, 1982, petitioner, Thomas W. Jones (Jones), was tried and convicted by a jury of first degree murder, robbery, and possession of an instrument of crime. After a penalty hearing, held before the late Judge Eugene Gelfand of the Court of Common Pleas, Philadelphia County, the jury returned a sentence of death. Jones was represented at trial by Stephen H. Serota, Esquire.

After the trial, Judge Gelfand appointed new counsel, Pamela Pryor Cohen, Esquire, to file post-verdict motions. Among the motions filed by Cohen was one for ineffective assistance of counsel, limited to allegations of Serota's ineffective representation during voir dire and during the penalty phase of the trial. (See Commonwealth v. Jones (June 18, 1984) (trial opinion), at 30, 31). In March, 1983, Judge Gelfand denied the motions and sentenced Jones to death. (Id. at 32). Cohen filed an appeal to the Pennsylvania Supreme Court citing the same grounds of ineffectiveness as those raised in the post-trial motion.

On April 23, 1985, the Pennsylvania Supreme Court remanded the case to the trial court with directions to conduct an evidentiary hearing and make findings on the ineffectiveness of counsel issue. Commonwealth v. Jones, 507 Pa. 426, 490 A.2d 436 (Pa.1985). Jones was appointed yet another attorney, Peter Vaira, Esquire, for the remand hearings which were held before Judge Charles Durham[2] of the Court of Common Pleas, Philadelphia County.

Vaira raised to Judge Durham, for the first time, the issue of ineffectiveness based upon conflict of interest. To prepare for the remand hearings, Vaira conducted an extensive investigation. This investigation revealed a conflict of interest by trial counsel Serota. (See Vaira affidavit, at 2–3, Commonwealth v. Jones, 528 Pa. 608, 596 A.2d 155 (Pa.1991), attached to Brief for Petitioner).

The conflict involved Serota's simultaneous representation of both Jones and his brother-

---

**2.** Judge Durham was assigned the evidentiary hearings following the death of Judge Gelfand.

in-law, Charles Nichols. (Factual details from *Commonwealth v. Jones* (July 29, 1994)(PCRA opinion) and *Commonwealth v. Jones* (Dec. 21, 1987) (remand opinion)). In August, 1981, Jones's brother committed suicide. On September 2, 1981, while at the funeral home making arrangements for Jones's brother's funeral, Jones and Nichols began to argue, which led to Nichols shooting and seriously wounding Jones.

Later that month, Nichols was arrested on a charge of attempted murder. Nichols hired Serota as his defense lawyer. On January 26, 1982, Jones was arrested for murder. Nichols suggested to Jones that Serota also represent him and offered to help pay Serota's fee. Serota undertook to represent Jones. On March 12, 1982, while Serota was representing both Nichols and Jones, the charges against Nichols were *nol prossed* because Jones refused to testify.

Jones's trial began on July 21, 1982. At the conclusion of the trial on August 4, 1982, the jury recommended a sentence of death, and a death sentence was imposed by Judge Gelfand on March 11, 1983. (*See Commonwealth v. Jones* (June 18, 1984) (trial opinion)). In September, 1982, Serota petitioned the court to withdraw as counsel and was given permission to do so on October 25, 1982.

Vaira presented three issues to Judge Durham during the evidentiary hearings: (1) trial counsel was ineffective in failing to present a diminished capacity claim during the guilt phase of the trial; (2) trial counsel was ineffective in failing to present evidence of emotional trauma during the penalty phase; and (3) trial counsel labored under a conflict of interest that rendered him ineffective. (*See Commonwealth v. Jones* (Dec. 21, 1987) (remand opinion), at 2, 6). After holding hearings on September 14, October 7, and October 26, 1987, Judge Durham found trial counsel Serota ineffective at the penalty phase. (*See id.* at 7). In addition, he found that Serota was not ineffective during the guilt phase and found the conflict of interest claim meritless. (*See id.* at 4–6). Judge Durham took no further action and returned the case to the Pennsylvania Supreme Court on December 22, 1987.

On March 7, 1988, Vaira, still counsel for Jones, petitioned the Pennsylvania Supreme Court to vacate the death sentence and to grant a stay of execution. (*See* Petition for Order Vacating Sentence of Death on the Basis of the Lower Court's Finding of Ineffective Assistance of Counsel Upon Remand, and Application for Stay). In its April 5, 1988 response to the petition, the Commonwealth stated that it did not contest Judge Durham's finding that trial counsel Serota was ineffective at the penalty stage. (*See* Commonwealth's Letter of April 5, 1988). On June 23, 1988, Jones applied to the Pennsylvania Supreme Court for extraordinary relief. (*See* Application for Extraordinary Relief to Remand Case to the Trial Court to Vacate Sentence of Death on the Basis of Trial Court's Finding of Ineffective Assistance of Counsel and Application to Transfer Remaining Appellate Issues to the Superior Court). This second application renewed the request to vacate the sentence of death and added a request to transfer the remaining appellate issues to Superior Court. The application also stated that there was no reason to hold a hearing on the earlier petition: "This Court issued an Order scheduling this matter for a hearing on October 24, 1988. In view of the Commonwealth's position, there is no issue in controversy before this Court and no reason to hold a hearing." *Id.* at 4 (para.16). On November 23, 1988, the Pennsylvania Supreme Court, in response to the second application, ordered the trial court to impose a life sentence and directed further appeals to Superior Court. *Commonwealth v. Jones*, 520 Pa. 68, 550 A.2d 536 (1988). On January 18, 1989, Judge Lynne Abraham imposed a life sentence and the sentence was appealed to the Pennsylvania Superior Court.

New counsel, Robert Hickok, Esquire, and Brian Ortelere, Esquire, represented Jones before the Pennsylvania Superior Court. Once again, Jones contended trial counsel Serota was ineffective because he had a conflict of interest. Attorney Cohen, the attorney who succeeded Serota, did not base the ineffective assistance of counsel claim raised in the post-trial motions upon the conflict of interest. On March 8, 1990, relying on Pennsylvania law, the Superior Court found the

issue of ineffective assistance of counsel based upon a conflict of interest waived since it had not been raised "at the earliest stage in the proceedings at which counsel whose effectiveness is being challenged no longer represents appellant." *Commonwealth v. Jones*, 391 Pa.Super. 292, 570 A.2d 1338, 1344 (1990).

On May 30, 1990, Jones filed a Petition for Allowance of Appeal requesting that the Supreme Court order the Superior Court to address the conflict of interest issue. Jones's allocatur brief identifies the following Question for Review:

> Whether the Superior Court erred in deeming petitioner's conflict of interest argument waived after this Court expressly mandated that the lower courts consider the issue and the Common Pleas Court, consistent with this Court's orders, compiled a full record and ruled on the issue.

Petitioner's Allocatur Brief to Pennsylvania Supreme Court, at 3. On July 11, 1991, the Supreme Court denied the petition for allocatur without opinion.

In February, 1992, Jones challenged his conviction under the Pennsylvania Post Conviction Relief Act (PCRA). 42 Pa.C.S. §§ 9541–46. The PCRA petition focused on the issue of ineffective assistance of counsel due to conflict of interest. David Rudenstein, Esquire, was originally appointed to represent Jones. Rudenstein withdrew after concluding the proceedings lacked merit. Jones opposed Rudenstein's withdrawal and another lawyer, Timothy Mara, Esquire, was appointed. Mara filed an amended petition that also concentrated on the issue of ineffectiveness based upon counsel's conflict of interest. (*See Commonwealth v. Jones* (July 29, 1994) (PCRA opinion), at 4, 5). On December 14, 1993, Judge Papalini of the Court of Common Pleas, Philadelphia County, held oral argument on the PCRA petition. He refused to hold an evidentiary hearing and used the record developed by Judge Durham in 1987.

The PCRA limits relief to claims that have not been previously litigated or waived. 42 Pa.C.S. §§ 9543, 9544; *see also Sistrunk v. Vaughn*, 96 F.3d 666, 669 n. 1, (3d Cir.1996) (explaining PCRA). Judge Papalini pre-

sumed that there had been no intentional waiver of the conflict issue by attorney Cohen. (*See Commonwealth v. Jones* (July 29, 1994) (PCRA opinion), at 9). In addition, he presumed that she had been ineffective in failing to discover Serota's conflict of interest. On July 29, 1994, Judge Papalini found that Serota had a conflict of interest and that Jones had not waived the conflict. (*See id.* at 10). Nonetheless, he denied relief because he found that the conflict did not adversely affect Serota's representation of Jones. (*See id.*). Jones did not appeal this decision to a higher Pennsylvania court.

On April 22, 1997, Jones filed a petition for a writ of habeas corpus in federal court. Jones, now represented by James Backstrom, Esquire, contends that the petition is proper because the ineffectiveness claim based upon a conflict of interest of trial counsel Serota (conflict of interest claim) has been presented to each state court. The Commonwealth argues that petitioner has procedurally defaulted, which prevents federal habeas review of the claim. Oral argument was held before me on November 5, 1998.

## II. Analysis

Initially, I will examine Jones's conflict of interest claim to determine whether there has been exhaustion of state remedies. This analysis will focus upon the concept of fair presentation. After determining that Jones has failed to exhaust state remedies, I will consider whether Jones has committed a procedural default. Finding a procedural default, I will determine whether this default can be overcome or whether I am barred from reviewing the merits of the petition.

## A. Exhaustion

■ "A federal habeas court may not grant a petition for a writ of habeas corpus filed by a person incarcerated from a judgment of a state court unless the petitioner has first exhausted the remedies available in the state courts." *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir.1997). To meet the exhaustion requirement, the petitioner must give each level of the state courts an oppor-

tunity to pass upon and correct the asserted constitutional violation. *Evans v. Court of Common Pleas,* 959 F.2d 1227, 1230 (3d Cir. 1992). To decide whether the state courts have had a chance to remedy the asserted error, a federal habeas court examines the federal claim to determine if it has been "fairly presented," *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

■■■ Fair presentation consists of both legal theory and supporting facts. The test is whether the "claims raised in the state courts are substantially equivalent to those asserted in federal court." *Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996). Therefore, it is insufficient for the petitioner to do no more than place "all the facts necessary to support the federal claim ... before the state court." *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *see also Landano v. Rafferty,* 897 F.2d 661, 669 (3d Cir.1990) (citing fair presentation cases). The petitioner must also make the same method of legal analysis available to both the state and federal courts. *Evans,* 959 F.2d at 1231.

■■■ It is unnecessary for each state court to discuss an issue in order for petitioner to demonstrate fair presentation. Rather, the issue must be presented to each court in a manner which gives it an opportunity to rule on the claim. *Swanger v. Zimmerman,* 750 F.2d 291, 295 (3d Cir.1984).

■■■ Jones asserts the exhaustion requirement on the conflict of interest claim has been met through the following series of court proceedings. First, following Jones' jury conviction in the Court of Common Pleas before Judge Gelfand, the conflict of interest was presented to the Pennsylvania Supreme Court on direct appeal. Second, after Judge Durham of the Court of Common Pleas completed the remand proceedings, the issue was presented to the Pennsylvania Supreme Court. Third, following the Pennsylvania Supreme Court's grant of extraordinary relief, the Superior Court considered the claim. Fourth, after the Superior Court found a waiver, the allocatur petition pre-

sented the issue to the Pennsylvania Supreme Court. Fifth, Judge Papalini of the Court of Common Pleas examined the claim in a PCRA proceeding. Jones, however, has never given the Pennsylvania Supreme Court the opportunity to decide the claim as it has been presented to this Court. Therefore, Jones has not fairly presented the conflict of interest and has not exhausted state remedies.

The initial appeal to the Pennsylvania Supreme Court followed Jones's jury conviction in the Court of Common Pleas before Judge Gelfand. The ineffective assistance claim was based solely on Serota's performance during voir dire and during the penalty phase of the trial. The conflict of interest issue had not been raised at all.

The matter returned to the Pennsylvania Supreme Court after Judge Durham, on remand, completed his fact finding on the conflict of interest. Jones then filed two applications to the Pennsylvania Supreme Court. The first application sought to vacate the death sentence and to stay execution. Jones asserts that this application fairly presented the issue because it enabled the Pennsylvania Supreme Court to resolve the conflict of interest claim as a matter of law. Before the Pennsylvania Supreme Court ruled on the application, however, Jones presented a second application requesting extraordinary relief.[3] The second application sought to vacate the sentence of death, to transfer the remaining issues to Superior Court, and to revoke the first application. This application did not present the conflict issue to the court. The Pennsylvania Supreme Court granted the relief requested in the second application and never considered the issues raised in the first application. Therefore, the fair presentation standard cannot be established at this stage of the case.

■■■ Following the Superior Court's finding of waiver, Jones appealed to the Pennsylvania Supreme Court, filing his allocatur brief based solely on the issue of waiver, not the Sixth Amendment claim. Therefore, Jones presented a different issue to the Pennsylvania Supreme Court than the claim

---

**3.** Jones filed his second application less than four months after the first application.

before this Court. When the Supreme Court denies allocatur without opinion, it is presumed that the basis for that decision is the same as that of the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). In this case, the last reasoned opinion was that of the Superior Court which ruled solely on the grounds of waiver. Therefore, both because the request for allocatur was restricted to a review of the Superior Court's ruling of waiver and because the denial of allocatur followed a Superior Court decision based on waiver, the conflict issue had not been fairly presented to the Supreme Court. Jones fails to meet the fair presentation standard established by *Doctor* and *Evans*.

The last Pennsylvania court to examine the conflict of interest was the PCRA court. Judge Papalini denied relief on the merits, but Jones did not appeal the decision to a higher Pennsylvania court. At this point, Jones had not fairly presented his claim to the Pennsylvania Supreme Court. Therefore, Jones needed to appeal Judge Papalini's decision to allow the Pennsylvania Supreme Court to decide the issue.

 To overcome the failure to exhaust, Jones presents a novel argument based upon *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), albeit one that is taken out of context. Jones focuses on a single sentence from *Ylst:* "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." *Ylst*, 501 U.S. at 801, 111 S.Ct. 2590. Jones's reading of *Ylst* disregards the well settled jurisprudence of the limitations that comity imposes upon federal habeas review. According to Jones, this language from *Ylst* obviates the need to pursue state collateral proceedings through the highest state court. Instead, state collateral relief need be followed only until a court considers the merits. Once the merits of the federal claim are reached, he argues, a petitioner can move to federal court. This theory contradicts precedent. Presentation of a claim to the Pennsylvania Supreme Court is a prerequisite to federal habeas review. *See Castille v. Peoples*, 489 U.S. 346, 349–51, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (requiring presentation of claim to Pennsylvania Supreme Court to satisfy exhaustion); *Burkett v. Love*, 89 F.3d 135, 138 (3d Cir.1996) ("To satisfy the exhaustion requirement, the claim must be presented to the state's highest court."). This requirement is not eliminated in a PCRA proceeding. *Cf. Swanger*, 750 F.2d at 295 (eliminating need to pursue collateral remedies only for claims exhausted on direct review). Petitioner's reading disregards the Supreme Court's statement in *Coleman* that "procedural default for purposes of federal habeas [occurs] regardless of the decision of the last state court to which the petitioner actually presented his claims." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

In addition, Jones's reading of *Ylst* increases federal judicial power by eviscerating the PCRA. The PCRA is the sole path to collateral relief in Pennsylvania. PCRA courts, however, can only hear claims that have not been previously litigated or waived. Few, if any, claims that are procedurally defaulted under federal habeas law do not fit within these two categories. To enable a petitioner to bring a federal habeas petition without Pennsylvania Supreme Court review of a federal claim raised in a PCRA proceeding, as Jones urges, converts the PCRA into a mere exhaustion device. This theory creates "an end run around the limits of [federal] jurisdiction and a means to undermine the State's interest in enforcing its laws." *Coleman*, 501 U.S. at 731, 111 S.Ct. 2546. Jones's argument from *Ylst* is untenable.

**B. Procedural Default**

Jones's failure to appeal the adverse PCRA decision means the issue of Serota's conflict of interest has not been exhausted. In this case, a procedural default results from the lack of exhaustion. Due to the procedural default, this court is barred from reviewing Jones's claim. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

 A procedural default exists when a two-prong test has been met: (1) a petitioner has failed to exhaust state remedies and (2) the court to which the claim would have to be presented in order to meet the

exhaustion requirement would find it procedurally barred. *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. 2546. Jones' failure to exhaust state remedies by not fairly presenting the claim to the Pennsylvania Supreme Court satisfies the first prong of procedural default.

The second prong, the existence of a procedural bar, has been met because it is now too late for Jones to appeal the adverse PCRA ruling by Judge Papalini. At oral argument, counsel for Jones stated that no further state remedies exist. (*See* Transcript of November 5, 1998 Hearing, at 44–47). This concession by counsel for Jones is supported by the fact that the statute of limitations in the PCRA precludes further review;[4] Pennsylvania has a firm[5] 30–day limit for appeals;[6] and, under similar circumstances, petitioners for habeas corpus have been denied relief. *See, e.g., Glass v. Vaughn*, 65 F.3d 13, 15 (3d Cir.1995) (failing to appeal PCRA decision creates procedural default); *Caswell v. Ryan*, 953 F.2d 853, 860–61 (3d Cir.1992) (procedurally defaulting claim not included in allocatur petition); *Beaty v. Patton*, 700 F.2d 110, 112–13 (3d Cir.1983) (failing to file allocatur petition creates procedural default).

 A federal habeas court cannot review a procedurally defaulted claim unless the petitioner demonstrates either (1) cause and prejudice or (2) a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. As to cause and prejudice, they are never asserted by Jones. Jones alludes to a miscarriage of justice, but fails to pursue this avenue.

Cause refers to "some objective factor external to the defense" that creates the procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Jones never asserted that there was cause for his procedural default, and, thus, he did not meet his burden.[7]

The fundamental miscarriage of justice exception to procedural default requires a petitioner to show "actual innocence." *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995). Jones has never argued actual innocence. This exception requires a petitioner to make a threshold showing that no reasonable juror would have voted to convict. *Glass*, 65 F.3d at 16–17. Instead, Jones asserts that combining the conflict of interest with alleged state judicial errors creates a miscarriage of justice. (*See* Reply to Commonwealth's Response to Petition for Writ of Habeas Corpus). Based upon Jones's submissions, this requirement cannot be met.[8] Therefore, the miscarriage exception is inapposite to the facts of this case.

THEREFORE, this _____ day of November, 1998, after considering the pleadings and record, it is ORDERED that for the foregoing reasons the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is DENIED.

---

4. 42 Pa.C.S. § 9545(b)(1).

5. Pa.R.A.P. 105. *See Commonwealth v. Meehan*, 427 Pa.Super. 261, 628 A.2d 1151, 1155 (1993).

6. Pa.R.A.P. 903.

7. Three possible arguments may exist, however, but none establishes cause. No allegation of cause can overcome the procedural default created by the failure to appeal the PCRA decision. *See Coleman*, 501 U.S. at 752–57, 111 S.Ct. 2546 (no cause for failure to appeal without right to counsel); *Caswell*, 953 F.2d at 862 ("absence of counsel" not enough for cause); *Tillett v. Freeman*, 868 F.2d 106, 108 (3d Cir.1989) (noting ineffective assistance of PCRA counsel solely concerns state law). At oral argument, Jones's counsel stated that attorney Cohen had not been ineffective and implied attorney Vaira had not been ineffective in not alleging Cohen to be ineffective. (*See* Transcript, at 62–63). These concessions eliminate any possible finding of cause on the direct appeals. A colloquy during oral argument hinted that the Superior Court's waiver finding may create cause. (*See id.*, at 63). However, it is unnecessary to decide whether that finding satisfies the cause prong. Because the PCRA court examined the conflict of interest on the merits, there is no prejudice to the Superior Court's waiver finding.

8. Jones argues that Serota could have pursued a plea agreement or a defense of diminished capacity, which may have resulted in a lesser sentence for Jones. (*See* Memorandum of Law, at 2, attached to Petition for Writ of Habeas Corpus).